# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

RECEIVED

2007 MAR 30 P 2: 43

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| JERRY MORGAN and<br>EMMA MORGAN, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | Case No. 2007- 3:07CV276~mht |
| | * | |
| vs. | * | |
| | * | |
| STANLEY SHAW and | * | Formerly Chambers County |
| GORDON BROWN, | * | Circuit Court Case No: CV-06-224 |
| | * | |
| | * | |
| Defendants. | * | |

TO: **THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA**

## NOTICE OF REMOVAL

COME NOW defendant Stanley Shaw ("Shaw"), and gives notice of removal of the above-styled action from the Circuit Court of Chambers County, Alabama to the United States District Court for the Middle District of Alabama, Eastern Division. As grounds for the removal of this action, the defendant aver the following:

### Introduction and Commencement of the Case

1.     Jerry Morgan and Emma Morgan rented the premises located at 217 Glass Road, Valley, Chambers County, Alabama from, first, Gordon Brown and later from Stanley Shaw. On or about November 30, 2004 the Morgans and Stanley Shaw entered into a lease-purchase type instrument entitled "Contract for Deed" whereby over time the Plaintiffs would purchase the aforementioned residence. On or about March 2, 2005 the house at 217 Glass Road burned.

The Plaintiffs claim as a result that they suffered compensatory damages, mental anguish and suffering, and that Shaw and Brown are also liable for punitive damages as well as interest, cost, and attorney's fees (see Complaint, Exh. "B").

## Amount in Controversy

6.      The plaintiffs' claim exceeds seventy-five thousand dollars ($75,000), exclusive of costs and interest.  The Complaint requests title to property, claims damages for breach of contract "in excess of $10,000.00", an unspecified amount of compensatory and punitive damages for fraud and an unspecified amount of damages for mental anguish and suffering.  (*See* Complaint, Exh. "B").

7.      While the Complaint seeks an undetermined amount of damages in excess of $10,000.00, as paragraph 5 indicates, the Plaintiffs' claims deal with a residence with a purchase price of $43,500.00 (Exh. "B", ¶ 5) which burned.  The Plaintiffs contend seller Shaw was required to maintain a fire, hazard and windstorm policy on the premises (Exh. "B", ¶ 10) for which the Plaintiffs allege they reimbursed Shaw for premiums (Exh. "B", ¶ 11).  Said policy is attached as exhibit "1" to exhibit "C", the affidavit of Stanley Shaw. As the affidavit and exhibit "2" thereto indicate, pursuant to the aforementioned policy State Farm Fire and Casualty Company paid $58,525.95 for damage and debris removal to the subject premises.

8.      The suit, then, involves the apportionment of this $58,525.95 insurance payment (Exh. "2" to Exh. "C"), credit for the $43,500.00 sales price of the burned house, title to the lot on which the house sat (Exh. "B", Count I) valued at approximately

$7,500.00 (affidavit of Monroe Smith attached as exhibit "D") as well as unspecified damages for mental anguish and suffering, and punitive damages.

9.      As mentioned above, the plaintiffs' complaint seeks an undetermined amount as damages. In *Fowler v. Provident Life and Accident Ins. Co.*, 256 F.Supp.2d 1243, 1249 (N.D. Ala. 2003), the court explained that "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a **preponderance of the evidence** that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." (*citing Tapscott v. MS Dealer Servs. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)) (emphasis added).  In determining whether the requisite amount in controversy exists to support federal jurisdiction, it is well settled that "the defendant bears the burden, **albeit the light burden**, of showing that the required amount is in controversy.  To do so, defendants must show only that it **does not** appear to a legal certainty that the claim is for less than the jurisdictional amount." *Locklear v. State Farm Mut. Automobile Ins. Co.*, 742 F.Supp. 679, 680 (S.D. Ga. 1989) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)) (emphasis added).

10.      Plaintiffs' complaint is "indeterminate" because plaintiffs did not set forth the amount of their compensatory damage claim and the issue of removal is determined on the basis of the complaint before the court at the time of removal. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).  "An indeterminate complaint . . . does not show that the case is not removable, it simply does not comment on federal jurisdiction." *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572, 574 (S.D. Ala. 1986).  In such cases, federal courts have "the duty to independently determine the propriety of

jurisdiction." *Id.* at 575. In doing so, "it is appropriate to look to the removal petition to ascertain jurisdiction. The defendant need not simply rely on the facts stated in the complaint, particularly when the crucial facts determining jurisdiction are within the defendant's knowledge anyway." *Id.*

11.    Further, in determining whether the amount in controversy requirement has been met, "the court must consider a claim for punitive damages 'unless it is apparent to a legal certainty that such cannot be recovered.'" *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F.Supp. 1388, 1389 (M.D. Ala. 1998) (*citing Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531 (11th Cir. 1987). Shaw and Brown in no way concede the fact that any wrong was committed, or that punitive damages are appropriate in this case (and in fact deny the same). However, it is entirely plausible that a punitive damage award combined with the compensatory damage relief sought by plaintiffs could exceed the jurisdictional amount.

12.    Reviewing the plaintiffs' claims as a whole, defendants Shaw and Brown aver that they have met the evidentiary burden set forth in *Lowe's* requiring these defendants to "only show 'by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement.'" 995 F.Supp at 1389 (*quoting Tapscott*, 77 F.3d at 1357).

## Citizenship of the Parties

13.    The plaintiffs are residents of Alabama.   (*See* Exh. "B" ¶¶ 1, 2).   The defendant Shaw is a resident of Troup County, Georgia.[1]   (*See* affidavit of Stanley Shaw, attached as Exh. "C").   Brown's citizenship (Alabama) should be disregarded because, as discussed in detail below, he was improperly/fraudulently joined as a defendant in this matter, and because the plaintiffs' only possibly viable claims in this case are asserted against Shaw, not Brown.

## Defendant Brown is Fraudulently Joined

14.    "Any civil case filed in state court may be removed by the Defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996).   "The citizenship of a resident Defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction." *Sellers v. Foremost Ins. Co.,* 924 F.Supp. 1116, 1117 (M.D. Ala. 1996).

15.    Joinder is deemed fraudulent in three situations:   first, when there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant; second, when there is outright fraud in the Plaintiff's pleading of jurisdictional facts; and third, "where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998).   In the case at

---

[1] The complaint incorrectly alleges that Shaw is a resident of Chambers County, Alabama.  (*See* Exh. "C", ¶ 3).

bar, the Complaint incorrectly alleges in ¶ 3 "that the Defendant, Stanley Shaw, is over

the age of nineteen (19) years and is a resident of Chambers County, Alabama." In fact,

Stanley Shaw is an adult resident of Troup County, Georgia (Affidavit of Shaw, exhibit

"C"). This means that, as the face of the Complaint indicates, the only non-diverse

defendant is Gordon Brown, a resident of Chambers County, Alabama.

16.    Count III is the only count of the Complaint that can be interpreted as

making a claim against Alabama citizen Brown. Count III states in pertinent part as

follows:

> 27.    That Defendant Gordon Brown, acting as agent
> for Seller [Shaw], discussed with the Plaintiffs the
> payment of insurance proceeds for the residence and
> various items of personal property located within the
> residence. Mr. Brown represented to the Plaintiffs that
> any and all proceeds concerning personal property
> owned by the Plaintiffs would be claimed against the
> insurance company and the proceeds delivered to the
> Plaintiffs.
>
> 28.    That    the    Plaintiffs    relied    on    the
> misrepresentation in that they did not file a claim for
> their personal property with the insurance company.

The only allegation against Brown, then, is one for fraud. The elements

which need be proved are as follows:

> The requisite elements of a fraud claim are (1) a
> misrepresentation, (2) of a material existing fact, (3)
> relied upon by the Plaintiff, (4) *who is damaged as a*
> *proximate result of the alleged misrepresentation.*

*Bowker v. Willis,* 580 So.2d 1333, 1334 (Ala. 1991) (emphasis supplied by the court);

*Pescia v. Auburn Ford-Lincoln Mercury, Inc.,* 68 F.Supp.2d 1269, 1276 (M.D. Ala.

1999) ALABAMA CODE § 6-5-101 (1975). A plaintiff must present sufficient evidence as

to each element of fraud. *Holton v. Blue Cross and Blue Shield of South Carolina,* 56

F.Supp.2d 1338, 1344 (M.D. Ala. 1999) (discussing summary judgment). For their fraud

claim to be viable, the plaintiffs must be *damaged* as *a proximate result* of reasonable

reliance upon the defendant's misrepresentation. *Bosarge Offshore, L.L.C. v. Compass

Bank,* 943 So.2d 782, 786 (Ala. 2006).

      17.    In the case at bar, assuming all inferences in favor of the Plaintiff, they

allege Defendant Shaw was required by the contract to, and did, maintain a "fire, hazard,

and windstorm policy" of insurance (Complaint, ¶¶ 9-10); that following the fire made

the subject of this suit Gordon Brown, acting as Shaw's agent, represented that personal

property of the Plaintiffs would be claimed against the aforementioned insurance policy,

and the proceeds delivered to the Plaintiffs (Complaint ¶ 27); and that the Plaintiffs

detrimentally relied on this "in that they did not file a claim for their personal property"

under Shaw's fire policy (Complaint ¶ 28).

      18.    Assuming for purposes of this pleading that Brown did make the alleged

misrepresentation, and the Plaintiffs relied upon it, said reliance did not proximately

cause any of their alleged damages. The subject insurance policy (attached hereto as

exhibit "1"to Shaw's affidavit, exhibit "C") clearly does not provide coverage for the

personal property of the Plaintiffs. Indeed, typical rental dwelling policies never do. The

policy contains the following pertinent definition:

> "You" and "your" mean the "named insured" shown in
> the **Declarations**.    Your spouse is included if a

> resident of your household.    "We", "us" and "our"
> mean the Company shown in the **Declarations**.

(exhibit "1" to exhibit "C" at p. 1).  The same policy page at ¶ 4 defines "**insured**" as the

"**named insured**" as "designated in the **declarations**" (exhibit "1" to exhibit "C", at p.

1).

19.    The "named insured[s]" under the policy are not the Morgans (exhibit "1"

to exhibit "C", declarations page).  This is not unusual, and is the reason why renters, or

people like the Morgans who "lease to own" a premesis typically obtain renter's

insurance to cover their personal property.  In fact, the very contract upon which the

Plaintiffs rely states in pertinent part as follows:

> **Content Insurance:** Purchaser shall be solely
> responsible for obtaining insurance of the contents,
> insuring contents owned by Purchaser.  Seller shall be
> solely responsible for obtaining insurance on all
> contents owned by Seller.

(Contract made a part of the Complaint, Exh. "B").

The subject policy provides personal property coverage as follows:

> We [the insurer] cover personal property owned or
> used by any **insured** [named insured] which is rented
> or held for rental with the **resident premises** for use of
> the maintenance of the **resident premises**.    This
> coverage applies only while the personal property is on
> the **resident premesis** or temporarily off premises for
> repairs.

(exhibit "1" to exhibit "C" at p. 2).

20.    Even if the Plaintiffs had relied on Brown's alleged misrepresentation, and

had made a claim against the applicable fire policy, there would have been no coverage

available. Refraining from making a claim did not proximately cause the Plaintiffs to lose any insurance proceeds under the applicable policy; there would have been no coverage whether they made a claim or not.

21.     A plaintiff can reasonably rely upon a misrepresentation yet still not be damaged as a proximate result; in that case the fraud claim is nonetheless not viable. In *Bosarge, supra,* the plaintiffs' fraud claim failed where there was no specific evidence that they were actually harmed by the alleged misrepresentation and there was, therefore, no detrimental reliance. 943 So.2d at 788.

22.     In that case styled *Fisher v. JMIC Life Insurance Company, Inc.,* 697 So.2d 57 (Ala.Civ.App. 1997) Fisher purchased an automobile. She alleged the salesperson misrepresented that it was a "program" car; she later learned it had been repossessed from a previous owner. Fisher claimed that had she known the automobile had been repossessed she would not have bought it. *Id.* at 59. The court found no evidence that Fisher suffered any damage as a result of any representations that the car was a "program" car, so her fraud claim failed. *Id.* at 59.

23.     The plaintiff in *Bowker, supra,* alleged that restaurant franchisee Willis misrepresented that a Pasquale's pizza franchise was transferred to Bowker. Bowker alleged that she was damaged when after a year of operation she had to close the restaurant. 580 So.2d at 1334. The evidence, however, was that Bowker closed the restaurant because it failed to make enough money, not because the franchise was not transferred. *Id.* at 1334. Accordingly, although Willis may have made a representation,

and Bowker may have been damaged, it was not the proximate result of a reliance upon Willis' representation. *Id.* at 1334.

24.     In *Pescia, supra,* the plaintiff alleged that Ford Motor Credit Company fraudulently suppressed the results of an investigation into discrepancies in her sales contract concerning the down payment and financing terms.   Pescia alleged that if informed, she would have taken steps to clear up the discrepancy but failed to address how she was injured thereby.   The court found that "there is no evidence that the information which FMCC uncovered would have helped her in any way." *Id.* at 1285. The court held that "[n]one of this information was of assistance to Ms. Pescia.  She has failed to provide any evidence of detrimental reliance and, therefore, she fails to demonstrate an essential element of her fraud claim against FMCC." *Id.* at 1285.  In the case at bar, had the Morgans made a claim for personal property under the subject policy it would not have mattered, since there was no coverage available.  Therefore there is no detrimental reliance.

25.     The Morgans' claim is similar to that forwarded by the plaintiff in that case styled *Wilson v. Gayfers Montgomery Fair Company,* 953 F.Supp. 1415 (M.D. Ala. 1996).   Wilson was a hearing impaired employee of Gayfers.   He alleged that his employer represented that if he did not resign he would be terminated due to poor performance evaluations. *Id.* at 1420.  After resigning Wilson suspected he had been mistreated by his employer because of his disability and filed suit. *Id.* at 1420.

26.    Among Wilson's allegations was that "the defendants falsely represented the reason for his termination and that he relied on that reason in tendering his resignation." *Id.* at 1423. The court ruled as follows:

> Assuming *arguendo* that Wilson had not believed [the employer's] reason for his termination, i.e., unsatisfactory job performance, and had not tendered his resignation, he still would have suffered the same damage: termination of his employment from Gayfers. It is clear to the court that whether Wilson resigned or not, Wilson's employment with Gayfers was at an end. Consequently, Wilson could not have legally suffered any damage as the result of any alleged misrepresentation. Because he is unable to establish one of the elements of this prima facia case of fraud, Wilson's entire conspiracy [to defraud] count must fail.

*Id.* at 1424.    Similarly, in the case at bar it is clear that whether the Morgans made a claim against Shaw's fire policy or not, they would have been unable to recover for any lost personal property. Accordingly, the fraud count must fail. Since the fraud count is the only one directed to Alabama resident Brown, there exists complete diversity between Plaintiffs and Defendant Shaw as to the remaining, viable claims. Therefore complete diversity does exist for removal purposes.

## Service and Filing of Notice of Removal

27.    Notice of the Defendants' removal of the above-styled action has been given to the Clerk of the Circuit Court of Chambers County, Alabama and to all adverse parties, as required by 28 U.S.C. § 1446(d).    (*See* Notice of Filing Notice of Removal, attached as Exhibit "D").

28.     No admission of fact, law, or liability is intended by this notice of removal, and all defenses, motions, and pleas are expressly reserved.

## Conclusion

29.     In summary:

(a)     Plaintiffs Jerry Morgan and Emma Morgan, citizens of Alabama, are diverse in citizenship from Stanley Shaw, the only defendant from which a judgment might be obtained in this action;

(b)     the amount in controversy exceeds $75,000, exclusive of interest and costs; and

(c)     this Notice of Removal is timely filed within the time prescribed by 28 U.S.C. § 1446(b).

WHEREFORE, Defendant Stanley Shaw has removed this action from the Circuit Court of Chambers County, Alabama, to the United States District Court for the Middle District of Alabama, Eastern Division.

Respectfully submitted this the ___*36*___ day of March, 2007.


_____
Christopher J. Hughes (HUGHC2886)
Attorney for Defendant Stanley Shaw

OF COUNSEL:
**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Facsimile (334) 745-3506
hughes@samfordlaw.com

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all of the Parties and Attorneys of record in the above-styled cause by First Class United States Mail, postage prepaid, on this the ___30___ day of March, 2007.

Joseph M. Tucker
P.O. Box 90
LaFayette, Alabama  36862

_____
OF COUNSEL

- 14 -



## ALABAMA SJIS CASE DETAIL
**Company Name: SAMFORD & DENSON, LLP**          **PREPARED FOR: CHRISTOPHER J. HUGHES**



County:  **12**     Case Number:  **CV 2007 000044 00**     Court Action:
Style:  **JERRY MORGAN, ET AL  -VS-  STANLEY SHAW, ET AL**

### Case

#### Case Information

| | |
|---|---|
| County: | **12 - CHAMBERS** |
| Case Number: | **CV 2007 000044 00** |
| JID: | **SRP STEVEN R. PERRYMAN** |
| Trial: | **J** |
| Style: | **JERRY MORGAN, ET AL  -VS-  STANLEY SHAW, ET AL** |
| Filed: | **02/20/2007** |

#### Case Type

| | |
|---|---|
| Code: | **CONT** |
| Type: | **CONTRACT/EJMNT/SEIZU** |
| Track | |
| Status: | **A** |
| Plaintiffs: | **002** |
| Defendants: | **002** |

#### Court Action

| | |
|---|---|
| DJID: | |
| Court Action: | |
| Judgment For: | |
| Trial days: | **0** |
| Lien: | **0** |

#### Damages

| | |
|---|---|
| Amount: | **$0.00** |
| Compensatory: | **$0.00** |
| Punitive: | **$0.00** |
| General: | **$0.00** |
| None: | |

#### Other Actions

| | | |
|---|---|---|
| Con Date: | Cont #: | Why: |
| RevJmt: | Admin Date: | Why: |
| Appeal Date: | Court: | Case: |
| Mistrial: | | |
| TBNV2: | DSDT: | DTYP: |

#### Comments

Comment 1:
Comment 2:

### Settings

#### Court Dates

| | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | | | - | |
| 2: | | | - | |
| 3: | | | - | |
| 4: | | | - | |

### Party 1 - C 001 - MORGAN JERRY

#### Party Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Party: | **C 001** | Name: | **MORGAN JERRY** | | Type: | **I Individual** |
| Index: | **Y** | Alt Name: | | | JID: | **SRP** |
| SSN: | | DOB: | | Sex: | Race: | |
| Address 1: | | | | Address 2: | | |
| Phone: | **334** | City: | | State: **AL** | Zip: **00000-0000** | Country: **US** |

#### Attorneys

| | | | | | |
|---|---|---|---|---|---|
| Attorney 1: | **TUC025** | Name: | **TUCKER JOSEPH MCNAMEE** | City: **LAFAYETTE** | State: **AL** |
| Attorney 2: | | Name: | | City: | State: |

| Attorney 3: | Name: | | City: | State: |
|---|---|---|---|---|
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: | Type: | Reissue: | Type: |
|---|---|---|---|
| Return: | Type: | Return: | Type: |
| Service: | Type: | Service On: | By: |
| Answer: | Type: | NS not: | NA not: |
| Warrant | Type: | Arrest: | |

### Court Action

| CACT: | Date: | For | Exempt: |
|---|---|---|---|
| Amount: | $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

## Party 2 - C 002 - MORGAN EMMAY

### Party Information

| Party: | C 002 | Name: | MORGAN EMMAY | | Type: | I Individual |
|---|---|---|---|---|---|---|
| Index: | Y | Alt Name: | | | JID: | SRP |
| SSN: | | DOB: | | Sex: | Race: | |
| Address 1: | | | Address 2: | | | |
| Phone: | 334 | City: | | State: AL | Zip: 00000-0000 | Country: US |

### Attorneys

| Attorney 1: TUC025 | Name: | TUCKER JOSEPH MCNAMEE | City: LAFAYETTE | State: AL |
|---|---|---|---|---|
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: | Type: | Reissue: | Type: |
|---|---|---|---|
| Return: | Type: | Return: | Type: |
| Service: | Type: | Service On: | By: |
| Answer: | Type: | NS not: | NA not: |
| Warrant | Type: | Arrest: | |

### Court Action

| CACT: | Date: | For | Exempt: |
|---|---|---|---|
| Amount: | $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

## Party 3 - D 001 - SHAW STANLEY

### Party Information

| Party: | D 001 | Name: | SHAW STANLEY | | Type: | I Individual |
|---|---|---|---|---|---|---|
| Index: | Y | Alt Name: | | | JID: | SRP |
| SSN: | | DOB: | | Sex: | Race: | |
| Address 1: | 515 N LANIER AVE | | Address 2: | | | |
| Phone: | 334 | City: LANETT | State: AL | Zip: 36863-0000 | Country: US |

### Attorneys

| Attorney 1: | Name: | | City: | State: |
|---|---|---|---|---|

| Attorney 2: | Name: | | City: | State: |
|---|---|---|---|---|
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| | | Type: | S Sheriff | Reissue: | | Type: |
|---|---|---|---|---|---|---|
| Issued: | 02/23/2007 | Type: | S Sheriff | Reissue: | | Type: |
| Return: | | Type: | | Return: | | Type: |
| Service: | 03/02/2007 | Type: | S Served person | Service On: | | By: |
| Answer: | | Type: | | NS not: | | NA not: |
| Warrant | | Type: | | Arrest: | | |

### Court Action

| CACT: | | Date: | | For | | Exempt: |
|---|---|---|---|---|---|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: |
| Comment: | | | | | | |

## Party 4 - D 002 - BROWN GORDON

### Party Information

| Party: | D 002 | Name: | BROWN GORDON | | | Type: | I Individual |
|---|---|---|---|---|---|---|---|
| Index: | Y | Alt Name: | | | | JID: | SRP |
| SSN: | | DOB: | | Sex: | | Race: | |
| Address 1: | 515 N LANIER AVE | | | Address 2: | | | |
| Phone: | 334 | City: | LANETT | State: | AL | Zip: 36863-0000 | Country: US |

### Attorneys

| Attorney 1: | Name: | | City: | State: |
|---|---|---|---|---|
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: | 02/23/2007 | Type: | S Sheriff | Reissue: | | Type: |
|---|---|---|---|---|---|---|
| Return: | 03/02/2007 | Type: | U Undeliverable | Return: | | Type: |
| Service: | | Type: | | Service On: | | By: |
| Answer: | | Type: | | NS not: | | NA not: |
| Warrant | | Type: | | Arrest: | | |

### Court Action

| CACT: | | Date: | | For | | Exempt: |
|---|---|---|---|---|---|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: |
| Comment: | | | | | | |

## Case Action Summary - 12CV200700004400

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 02/20/2007 | 1:47:00 | TEXT | COMPLAINT | THW |
| 02/27/2007 | 1:44:50 | FILE | FILED THIS DATE: 02/20/2007          (AV01) | THW |
| 02/27/2007 | 1:44:51 | ASSJ | ASSIGNED TO JUDGE: STEVEN R PERRYMAN          (AV01) | THW |
| 02/27/2007 | 1:44:52 | SCAN | CASE SCANNED STATUS SET TO: Y          (AV01) | THW |
| 02/27/2007 | 1:44:53 | TDMJ | JURY TRIAL REQUESTED          (AV01) | THW |
| 02/27/2007 | 1:44:54 | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | THW |
| 02/27/2007 | 1:44:55 | ORIG | ORIGIN: INITIAL FILING          (AV01) | THW |
| 02/27/2007 | 1:45:17 | PART | MORGAN JERRY ADDED AS C001          (AV02) | THW |

| 02/27/2007 | 1:45:18 | ATTY | LISTED AS ATTORNEY FOR C001: TUCKER JOSEPH MCNAME | THW |
|---|---|---|---|---|
| 02/27/2007 | 1:45:28 | PART | MORGAN EMMAY ADDED AS C002          (AV02) | THW |
| 02/27/2007 | 1:45:29 | ATTY | LISTED AS ATTORNEY FOR C002: TUCKER JOSEPH MCNAME | THW |
| 02/27/2007 | 1:46:00 | PART | SHAW STANLEY ADDED AS D001          (AV02) | THW |
| 02/27/2007 | 1:46:25 | PART | BROWN GORDON ADDED AS D002          (AV02) | THW |
| 02/27/2007 | 1:46:36 | SUMM | SHERIFF ISSUED: 02/23/2007 TO D002          (AV02) | THW |
| 02/27/2007 | 1:46:46 | SUMM | SHERIFF ISSUED: 02/23/2007 TO D001          (AV02) | THW |
| 03/28/2007 | 11:06:19 | SERC | SERVICE OF SERVED PERSON ON 03/02/2007 FOR D001 | THW |
| 03/28/2007 | 11:07:34 | RETU | RETURN OF UNDELIVERABLE ON 03/02/2007 FOR D002 | THW |

*END OF THE REPORT*

Mar. 9. 2007 12:57rM    5540441010    No. 1855

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

01-0177-424

Jerry Morgan and                  )
Emma Morgan,                      )
        PLAINTIFFS,               )        Case No.
                                  )        CV 07- 044
                                  )
    vs.                           )
                                  )
Stanley Shaw and                  )        DEFENDANT'S
Gordon Brown                      )        EXHIBIT
        DEFENDANTS,               )          B

## SUMMONS

TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(b) (2) or 4.2(b) (2) or 4.4(b) (2) OF THE ALABAMA RULES OF CIVIL PROCEDURE TO EFFECT SERVICE.

You are hereby commanded to serve this summons and copy of the complaint in this action upon Defendant, **Stanley Shaw, 515 North Lanier Avenue, Lanett, Alabama 36863.**

## NOTICE TO DEFENDANT

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to Joseph M. (Mac) Tucker, the Attorney for the Defendant, whose address is Post Office Box 90, LaFayette, Alabama 36862.

THIS ANSWER MUST BE MAILED OR DELIVERED WITH THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED 02-23-07                    _Charles W. Story_
                                  CLERK OF COURT

RETURN ON SERVICE
    Received this summons at _____ on _____ and
_____ I served it on the
on _____ at _____ by delivering a copy of the process and
within named _____, 2007.
accompanying documents to him. Date _____

                        _____
                        Process Server Signature
                        Type of process server: _____
                        Address: _____

Received 3-3-07 from SS Park 2:30 PM

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

01-Q177-424

Jerry Morgan and
Emma Morgan,
        PLAINTIFFS

vs.

Stanley Shaw and
Gordon Brown
        DEFENDANTS,

FILED IN OFFICE THIS

FEB 2 0 2007

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

Case No.
CV 07- __044__

## COMPLAINT

COMES NOW the Plaintiff in the above styled cause by and through their attorney, Joseph M. Tucker and shows unto the court as follows:

1. That the Plaintiff, Jerry Morgan, is over the age of nineteen (19) years and is a resident of Chambers County, Alabama.

2. That the Plaintiff, Emma Morgan, is over the age of nineteen (19) years and is a resident of Chambers County, Alabama.

3. That the Defendant, Stanley Shaw, is over the age of nineteen (19) years and is a resident of Chambers County, Alabama.

4. That the Defendant, Gordon Brown, is over the age of nineteen (19) years and is a resident of Chambers County, Alabama.

5. That on November 30, 2004, the Plaintiff, Jerry Morgan, and Defendant, Stanley Shaw (hereinafter "Seller"), executed an instrument entitled "Contract for Deed" whereby Seller agreed to sell to the Plaintiffs a certain parcel of real property containing a residence and located at 217 Glass Road, Valley, Chambers County, Alabama. Plaintiffs agreed to pay a purchase price of $43,500.00. A copy of said contract is attached hereto as Exhibit "A".

6. That the Seller agreed to accept monthly payments of $350.00 beginning December 1, 2004 and continuing on the first day of each month for a total of 240 months until fully paid.

7. The Plaintiffs were thereafter put into possession of the property under the terms of the contract.

8. The Plaintiffs made monthly payments under the terms of the contract and Seller accepted monthly payments from Plaintiffs under the terms of the contract until the

residence on the property was destroyed by fire on or about Ma. 12, 2005.

9.  That said instrument required that either the Plaintiff or Seller maintain fire, hazard, and windstorm insurance in the amount of $45,000.00 on the said property.

10.  That Defendant, Sellers, pursuant to Paragraph 8 of said instrument, maintained a fire, hazard, and windstorm policy.

11.  That the Plaintiffs paid to Seller the monthly premium on said insurance policy until the time the residence was destroyed by fire.

12.  That, by virtue of the terms of the agreement, the valid contract provided that upon total payment of the purchase price, Seller would deliver to Plaintiff, Jerry Morgan, a Warranty Deed to the property, free and clear of any liens or encumbrances.

13.  That the contract provided that Seller apply all insurance proceeds to the sales price and pay any surplus to Buyers.

14.  That Seller collected insurance proceeds in excess of the balance owed by Buyers.

15.  That Gordon Brown, as agent for Seller, represented that the Buyers personal property was covered by insurance.

16.  That Seller collected insurance proceeds for personal property of the Plaintiffs.

17.  That Paragraph 8 of said instrument provided that, in the case of loss or damage for which insurance proceeds would be available, the Plaintiffs could elect not to repair or rebuild, in which case all of the said insurance proceeds must be applied first toward the satisfaction of any existing defaults, and then as a prepayment upon the principal balance owing to Seller.

18.  That the Plaintiffs have elected not to repair or rebuild the residence as Seller demolished it shortly after the fire.

19.  That Paragraph 8 of said instrument provided that any and all surplus insurance proceeds in excess of the balance owing to Seller must be paid over to the Plaintiffs.

20.  That Seller has failed to apply any of the insurance proceeds as a prepayment on the contract, and have failed to remit to the Plaintiffs any surplus proceeds to which they would be entitled after prepayment.

21.  That, pursuant to Paragraph 10 of the instrument, the Plaintiffs are entitled to a Warranty Deed for the said property at Seller's expense, free and clear of any liens or encumbrances.

22.  That the Plaintiffs are entitled to any and all surplus insurance proceeds remaining after the prepayment of the purchase price.

Mar. 5. 2007 12:56PM    5540441V10

23.  The Plaintiffs claim punitive damages from the Defendants in that the breach of the Defendants contractual obligations and duties necessarily and reasonably resulted in mental anguish and/or suffering of the Plaintiffs.

## COUNT I

## SPECIFIC PERFORMANCE

24.  The Plaintiffs reallege all of the allegations of the above and foregoing paragraphs and incorporate them herein.

WHEREFORE, premises considered, the Plaintiff demands judgment against Defendant for specific performance of the Contract and prays that the Court will order the Defendant to execute and deliver to the Plaintiff a deed for the said property, attorney's fees and cost of this action for such other and further relief as may be just.

## COUNT II

## BREACH OF CONTRACT

25.  The Plaintiffs reallege all of the allegations of the above and foregoing paragraphs and incorporate them herein.

WHEREFORE, premises considered, the Plaintiff demands judgment against Defendant in excess of $10,000.00 plus costs, attorney's fees, and all other damages allowed by law.

## COUNT III

## FRAUD

26.  The Plaintiffs reallege all of the allegations of the above and foregoing paragraphs and incorporate them herein.

27. That Defendant Gordon Brown, acting as agent for Seller, discussed with the Plaintiffs the payment of insurance proceeds for the residence and various items of personal property located within the residence. Mr. Brown represented to the Plaintiffs that any and all proceeds concerning personal property owned by the Plaintiffs would be claimed against the insurance company and the proceeds delivered to the Plaintiffs.

28. That the Plaintiffs relied on the misrepresentation in that they did not file a claim for their personal property with the insurance company.

29. That Mr. Brown's actions constitute fraud in that he and/or Seller have failed to remit to the Plaintiffs any insurance proceeds received as a result of the claim filed against

the insurance company for personal property owned by the Plaintiffs.

30. That Plaintiffs claim punitive damages from the Defendants in that the intentional misrepresentation of the Defendants has necessarily and reasonably resulted in mental anguish and/or suffering of the Plaintiffs.

WHEREFORE, premises considered, the Plaintiffs demand judgment against the Defendants in such sum to be assessed by a jury for compensatory damages plus interest, costs, attorney's fees and all other damages as allowed by law.

Respectfully, submitted this the 10th day of February, 2007.

Joseph M. (Mac) Tucker
Attorney for Plaintiffs
Alabama Bar No. TUC025
Post Office Box 90
LaFayette, Alabama  36862
(334) 864-0090

PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON ALL ISSUES UPON WHICH JURY TRIAL MAY BE HAD.

## VERIFICATION

STATE OF ALABAMA

COUNTY OF CHAMBERS

      Personally appeared before me, the undersigned officer duly authorized to administer oaths in the State of Alabama, **Jerry Morgan**, who first being duly sworn, states as follows:

      I, **Jerry Morgan**, am verifying the contents of the foregoing Complaint, **Jerry Morgan**, filed in my behalf. I have read the Complaint and know its content. Said Complaint was prepared with the assistance and advice of counsel, and subject to inadvertent or undiscovered errors, is true and correct to the best of my knowledge, information and belief.

      Further affiant sayeth naught.

_Jerry morgan_
Jerry Morgan

Sworn to and subscribed before me this _12th_ day of _February_, 2007.

_____
Notary Public
My commission expires: _9/29/08_

Exhibit "A"

## CONTRACT FOR DEED

THIS DAY this agreement is entered into by and between Stanley V. Shaw, hereinafter referred to as "SELLER", whether one or more, and _Jerry Morgan & Emma Morgan_, hereinafter referred to as "PURCHASER", whether one or more, on the terms and conditions and for the purposes hereinafter set forth:

1.

## SALE OF PROPERTY

For and in consideration of TEN DOLLARS ($10.00) and other good and valuable considerations the receipt and sufficiency of which is hereby acknowledged, Seller does hereby agree to convey, sell, assign, transfer and set over unto Purchaser, the following property situated in _Chambers_ County, State of Alabama, said property being described as follows: *(Type description or attach description as exhibit "A")*

_See Exhibit A_

Together with all rights of ownership associated with the property, including, but not limited to, all easements and rights benefiting the premises, whether or not such easements and rights are of record, and all tenements, hereditaments, improvements and appurtenances, including all lighting fixtures, plumbing fixtures, shades, venetian blinds, curtain rods, storm windows, storm doors, screens, awnings, if any, and _____ now on the premises.

SUBJECT TO all recorded easements, rights-of-way, conditions, encumbrances and limitations and to all applicable building and use restrictions, zoning laws and ordinances, if any, affecting the property.

01-0172-424

## 2.
## PURCHASE PRICE AND TERMS

The purchase price of the property shall be $ _43,500_ . The purchaser does hereby agree to pay to the order of the Seller the sum of _____ _0_ _____ Dollars ($ ___0___ ) upon execution of this agreement, with the balance of $ _43,500_ being due and payable as follows:

Balance payable, together with interest on the whole sum that shall be from time to time unpaid at the rate of _7.483?_ per cent, per annum, payable in the amount of $ _350_ dollars per month beginning on the __1__ day of _December_, 20 _04_ and continuing on the same day of each month thereafter for _240_ months until fully paid. _Plus property taxes and insurance ._

If interest is charged, interest shall be computed monthly and deducted from payment and the balance of payment shall be applied on principal.

## 3.
## TIME OF THE ESSENCE

Time is of the essence in the performance of each and every term and provision in this agreement by Purchaser.

## 4.
## SECURITY

This contract shall stand as security of the payment of the obligations of Purchaser.

## 5.
## MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a

01-Q171-424

part of the security for the performance of this contract and shall not be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

## 6.
## CONDITION OF IMPROVEMENTS

Purchaser agrees that the Seller has not made, nor makes any representations or warranties as to the condition of the premises, the condition of the buildings, appurtenances and fixtures locate thereon, and/or the location of the boundaries. Purchaser accepts the property in its "as-is" condition without warranty of any kind.

## 7.
## POSSESSION OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract, Purchaser agrees to return the property to Seller in substantially the same condition as it now exists, ordinary wear and tear excepted. Seller reserves the right to inspect the property at any time with or without notice to Purchaser.

## 8.
## TAXES, INSURANCE AND ASSESSMENTS

Taxes and Assessments: During the term of this contract:(Select one)

(a)     Purchaser shall pay all taxes and assessments levied against the property.

(b)     Seller shall pay all taxes and assessments levied against the property. In the event that Seller pays the taxes and insurance, Purchaser shall reimburse Seller for same upon 30 days notice to purchaser.

Content Insurance: Purchaser shall be solely responsible for obtaining insurance of the contents, insuring contents owned by Purchaser. Seller shall be solely responsible

Mar. 5. 2007 12:40PM    5540441018    No. 1853  P. 11

01- 7177-424

for obtaining insurance on all contents owned by Seller.

**Liability and Hazard Insurance:** Liability insurance shall be maintained by Purchaser during the term of this contract naming Seller as an additional insured, in the amount of not less than $ *100,000* .

**Fire, Hazard and Windstorm insurance:** Fire, hazard and windstorm insurance shall be maintained as follows: (Select one)

> (a)    Purchaser shall obtain fire, hazard and windstorm insurance in the amount not less than $ *45,000* , on a policy of insurance naming Seller as additional insured.

> (b)    Seller shall obtain and pay for hazard, fire and windstorm insurance in an amount not less than $ *45,000* . In the event Seller elects this option, Purchaser shall repay the amount so paid by Seller within thirty (30) days of demand for same by Seller.

Should the Purchaser fail to pay any tax or assessment, or installment thereof, when due, or keep said buildings insured, Seller may pay the same and have the buildings insured, and the amounts thus expended shall be a lien on said premises and may be added to the balance then unpaid, or collected by Seller, in the discretion if Seller with interest until paid at the rate of the ___*8*___ per cent per annum.

In case of any damage as a result of which said insurance proceeds are available, the Purchaser may, within sixty (60) days of said loss or damage, give to the Seller written notice of Purchaser's election to repair or rebuild the damaged parts of the premises, in which event said insurance proceeds shall be used for such purpose. The balance of said proceeds, if any, which remain after completion of said repairing or rebuilding, or all of said insurance proceeds if the Purchaser elects not to repair or rebuild, shall be applied first toward the satisfaction of any existing defaults under the terms of this contract, and then as a prepayment upon the principal balance owing. No such prepayment shall defer the time for payment of any remaining payments required by said contract. Any surplus of said proceeds in excess of the balance owing hereon shall be paid to the Purchaser.

9.

## DEFAULT

If the Purchaser shall fail to perform any of the covenants or conditions contained



in this contract on or before the date on which the performance is required, the Seller shall give Purchaser notice of default or performance, stating the Purchaser is allowed fourteen (14) days from the date of the Notice to cure the default or performance. In the event the default or failure of performance is not cured within the 14 day time period, then Seller shall have any of the following remedies, in the discretion of Seller:

(a)   Give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, this contract shall stand cancelled and Seller may regain possession of the property as provided herein; or

(b)   give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, the entire principal balance and unpaid interest shall be immediately due and payable and Seller may take appropriate action against Purchaser for collection of same according to the laws of the State of Alabama.

In the event of default in any of the terms and conditions or installments due and payable under the terms of this contract and Seller elects 9(a), Seller shall be entitled to immediate possession of the property.

In the event of default and termination of the contract by Seller, Purchaser shall forfeit any and all payments made under the terms of this contract including taxes and assessments as liquidated damages, Seller shall be entitled to recover such other damages as they may be due which are caused by the acts or negligence of Purchaser.

The parties expressly agree that in the event of default not cured by the Purchaser and termination of this agreement, and Purchaser fails to vacate the premises, Seller shall have the right to obtain possession by appropriate court action.



*01-0177-424*

## 10.
## DEED AND EVIDENCE OF TITLE

Upon total payment of the purchase price and any and all late charges, and other amounts due Seller, Seller agrees to deliver to Purchaser a Warranty Deed to the subject property, at Seller's expense, free and clear of any liens or encumbrances other than taxes and assessments for the current year.

## 11.
## NOTICES

All notices required hereunder shall be deemed to have been made when deposited in the U. S. Mail, postage prepaid, certified, return receipt requested, to the Purchaser or Seller at the addresses listed below. All notices required hereunder may he sent to:

**Seller:**

Stanley V. Shaw

515 N. Lanier Ave

Lanett, AL 36863

**Purchaser:**

*Jerry Morgan & Emma Morgan*

*217 Glass Rd.*

*Valley, AL 36854*

and when mailed, postage prepaid, to said address, shall be binding and conclusively presumed to be served upon said parties respectively.

## 12.
## ASSIGNMENT OR SALE

Purchaser shall not sell, assign, transfer or convey any interest in the subject property or this agreement, without first securing the written consent of the Seller.

*01-0177-424*

**13.**
## PREPAYMENT

Purchaser to have the right to prepay, without penalty, the whole or any part of the balance remaining unpaid on this contract at any time before the due date.

**14.**
## ATTORNEY FEES

In the event of default, Purchaser shall pay to Seller, Seller's reasonable and actual attorneys' fees and expenses incurred by Seller in enforcement of any rights of Seller. All attorney fees shall be payable prior to Purchaser's being deemed to have corrected any such default.

**15.**
## LATE PAYMENT CHARGES

If Purchaser shall fail to pay, within fifteen (15) days after due date, any installment due hereunder, Purchaser shall be required to pay an additional charge of five (5%) percent of the late installment. Such charge shall be paid to Seller at the time of payment of the past due installment.

**16.**
## CONVEYANCE OR MORTGAGE BY SELLER

If the Seller's interest is now or hereafter encumbered by mortgage, the Seller covenants that Seller will meet the payments of principal and interest thereon as they mature and produce evidence thereof to the Purchaser upon demand. In the event the Seller shall default upon any such mortgage or land contract, the Purchaser shall have the right to do the acts or make the payments necessary to cure such default and shall be reimbursed for so doing by receiving, automatically, credit to this contract to apply on the payments due or to become due hereon.

The Seller reserves the right to convey, his or her interest in the above described land and such conveyance hereof shall not be a cause for rescission but such conveyance shall be subject to the terms of this agreement.

OL-0177-424

The Seller may, during the lifetime of this contract, place a mortgage on the premises above described, which shall be a lien on the premises, superior to the rights of the Purchaser herein, or may continue and renew any existing mortgage thereon, provided that the aggregate amount due on all outstanding mortgages shall not at any time be greater than the unpaid balance of the contract.

## 17.
## ENTIRE AGREEMENT

This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein. All prior or contemporaneous agreements, understandings, representations, oral or written, are merged into this Agreement.

## 18.
## AMENDMENT - WAIVERS

This Agreement shall not be modified, or amended except by an instrument in writing signed by all parties.

No delay or failure on the part of any party hereto in exercising any right, power or privilege under this Agreement or under any other documents furnished in connection with or pursuant to this Agreement shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein. No single or partial exercise of any such right, power or privilege shall preclude the further exercise of such right, power or privilege, or the exercise of any other right, power or privilege. No waiver shall be valid against any party hereto unless made in writing and signed by the party against whom enforcement of such waiver is sought and then only to the extent expressly specified therein.

## 19.
## SEVERABILITY

If any one or more of the provisions contained in this Agreement shall be held illegal or



01-0122-424

unenforceable by a court, no other provisions shall be affected by this holding. The parties intend that in the event one or more provisions of this agreement are declared invalid or unenforceable, the remaining provisions shall remain enforceable and this agreement shall be interpreted by a Court in favor of survival of all remaining provisions.

## 20.
## HEADINGS

Section headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.

## 21.
## PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, as the identity of the person or entity may require. As used in this agreement: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

## 22.
## JOINT AND SEVERAL LIABILITY

All Purchasers, if more than one, covenants and agrees that their obligations and liability shall be joint and several.

## 23.
## PURCHASER'S RIGHT TO REINSTATE AFTER ACCELERATION

If Purchaser defaults and the loan is accelerated, then Purchaser shall have the right of reinstatement as allowed under the laws of the State of Alabama, provided that Purchaser: (a) pays Lender all sums which then would be due under this agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements;



01-0177-424

and (c) pays all expenses incurred in enforcing this agreement, including, but not limited to, reasonable attorneys' fees, and other fees incurred for the purpose of protecting Seller's interest in the Property and rights under this agreement. Seller may require that Purchaser pay such reinstatement sums and expenses in one or more of the following forms, as selected by Seller: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

### 24.
### HEIRS AND ASSIGNS

This contract shall be binding upon and to the benefit of the heirs, administrators, executors, and assigns of the parties hereto. However, nothing herein shall authorize a transfer in violation of paragraph (12).

### 25.
### OTHER PROVISIONS

_____

_____

_____

_____


SELLER: _____

PURCHASER: _Jerry Morgan_____



WITNESS THE SIGNATURES of the Parties this the _30_ day of _Nov._, 20 _04_.

01-0177-424

THE STATE OF ALABAMA
_Chambers_____ COUNTY

I, a Notary Public, hereby certify that _Stanley V. Shaw____ whose name is signed to the foregoing instrument or conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, executed the same voluntarily on the day the same bears date.

Given under my hand this _30_ day of ____Nov_____, A. D. 20 _04_

Notary Public
Print Name __

My commission expires:

_____

THE STATE OF ALABAMA
_Chambers_____ COUNTY

I, a Notary Public, hereby certify that _Terry Morgan & Emma Morgan_ whose name is signed to the foregoing instrument or conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, executed the same voluntarily on the day the same bears date.

Given under my hand this _30_ day of ____Nov_____, A. D. 20 _04_

Notary Public
Print Name __

My commission expires:

_____

| Seller(s) Name and Address | Buyer(s) Name and Address |
|---|---|
| Name: Stanley V. Shaw | Name: Terry Morgan & Emma Morgan |
| Address: 515 N Lanier Ave | Address: 217 Glass Rd |
| City: Lanett | City: Valley |
| State: AL         Zip: 36863 | State: AL   Zip: 36863 |
| Phone: 334-642-2835 | Phone: 706-315-3809 |

# Mortgage and Loan with Extra Payments

## Statistics

| | | | | |
|---|---|---|---|---|
| Amount financed | 43,500.00 | Start date of loan | 12/1/04 |
| Annual interest (e.g., 7.25) | 7.4837 | Number of payments | 240 |
| Duration of loan (in years) | 20 | | |

## Projected Costs

### Without extra payments:

| | | | | |
|---|---|---|---|---|
| Amount financed | 43,500.00 | Number of payments | 240 |
| Finance charges | 40,499.56 | Monthly payments | 350.00 |
| Projected cost | 83,999.56 | Yearly costs | 4,200.00 |

### With extra payments:

| | | | | |
|---|---|---|---|---|
| Principal amount | 43,500.00 | Number of payments | 240 |
| Total extra payments | 0.00 | Actual cost | 83,999.56 |
| Finance charges | 40,499.56 | Savings | 0.00 |
| | | Pay-off date | ######### |
| | | Amount of final payment | 349.56 |

## Amortization Table

| Interest | Principal | Balance | Accum Interest | Accum Principal | Date | Additional Payments | No |
|---|---|---|---|---|---|---|---|
| 271.28 | 78.72 | 43,421.28 | 271.28 | 78.72 | 12/1/04 | | 1 |
| 270.79 | 79.21 | 43,342.07 | 542.07 | 157.93 | 1/1/05 | | 2 |
| 270.30 | 79.70 | 43,262.37 | 812.37 | 237.63 | 2/1/05 | | 3 |
| 269.80 | 80.20 | 43,182.17 | 1,082.17 | 317.83 | 3/1/05 | | 4 |
| 269.30 | 80.70 | 43,101.47 | 1,351.47 | 398.53 | 4/1/05 | | 5 |
| 268.80 | 81.20 | 43,020.27 | 1,620.27 | 479.73 | 5/1/05 | | 6 |
| 268.29 | 81.71 | 42,938.56 | 1,888.56 | 561.44 | 6/1/05 | | 7 |
| 267.78 | 82.22 | 42,856.34 | 2,156.34 | 643.66 | 7/1/05 | | 8 |
| 267.27 | 82.73 | 42,773.61 | 2,423.61 | 726.39 | 8/1/05 | | 9 |
| 266.75 | 83.25 | 42,690.36 | 2,690.36 | 809.64 | 9/1/05 | | 10 |
| 266.23 | 83.77 | 42,606.59 | 2,956.59 | 893.41 | 10/1/05 | | 11 |
| 265.71 | 84.29 | 42,522.30 | 3,222.30 | 977.70 | 11/1/05 | | 12 |
| 265.19 | 84.81 | 42,437.49 | 3,487.49 | 1,062.51 | 12/1/05 | | 13 |
| 264.66 | 85.34 | 42,352.15 | 3,752.15 | 1,147.85 | 1/1/06 | | 14 |
| 264.13 | 85.87 | 42,266.28 | 4,016.28 | 1,233.72 | 2/1/06 | | 15 |
| 263.59 | 86.41 | 42,179.87 | 4,279.87 | 1,320.13 | 3/1/06 | | 16 |
| 263.05 | 86.95 | 42,092.92 | 4,542.92 | 1,407.08 | 4/1/06 | | 17 |
| 262.51 | 87.49 | 42,005.43 | 4,805.43 | 1,494.57 | 5/1/06 | | 18 |
| 261.96 | 88.04 | 41,917.39 | 5,067.39 | 1,582.61 | 6/1/06 | | 19 |
| 261.41 | 88.59 | 41,828.80 | 5,328.80 | 1,671.20 | 7/1/06 | | 20 |
| 260.86 | 89.14 | 41,739.66 | 5,589.66 | 1,760.34 | 8/1/06 | | 21 |
| 260.31 | 89.69 | 41,649.97 | 5,849.97 | 1,850.03 | 9/1/06 | | 22 |
| 259.75 | 90.25 | 41,559.72 | 6,109.72 | 1,940.28 | 10/1/06 | | 23 |
| 259.18 | 90.82 | 41,468.90 | 6,368.90 | 2,031.10 | 11/1/06 | | 24 |
| 258.62 | 91.38 | 41,377.52 | 6,627.52 | 2,122.48 | 12/1/06 | | 25 |
| 258.05 | 91.95 | 41,285.57 | 6,885.57 | 2,214.43 | 1/1/07 | | 26 |
| 257.47 | 92.53 | 41,193.04 | 7,143.04 | 2,306.96 | 2/1/07 | | 27 |
| 256.90 | 93.10 | 41,099.94 | 7,399.94 | 2,400.06 | 3/1/07 | | 28 |
| 256.32 | 93.68 | 41,006.26 | 7,656.26 | 2,493.74 | 4/1/07 | | 29 |
| 255.73 | 94.27 | 40,911.99 | 7,911.99 | 2,588.01 | 5/1/07 | | 30 |

01-Q157-429

| | | | | | | |
|---|---|---|---|---|---|---|
| 255.14 | 94.86 | 40,817.13 | 8,167.13 | 2,682.87 | 6/1/07 | 31 |
| 254.55 | 95.45 | 40,721.68 | 8,421.68 | 2,778.32 | 7/1/07 | 32 |
| 253.96 | 96.04 | 40,625.64 | 8,675.64 | 2,874.36 | 8/1/07 | 33 |
| 253.36 | 96.64 | 40,529.00 | 8,929.00 | 2,971.00 | 9/1/07 | 34 |
| 252.76 | 97.24 | 40,431.76 | 9,181.76 | 3,068.24 | 10/1/07 | 35 |
| 252.15 | 97.85 | 40,333.91 | 9,433.91 | 3,166.09 | 11/1/07 | 36 |
| 251.54 | 98.46 | 40,235.45 | 9,685.45 | 3,264.55 | 12/1/07 | 37 |
| 250.93 | 99.07 | 40,136.38 | 9,936.38 | 3,363.62 | 1/1/08 | 38 |
| 250.31 | 99.69 | 40,036.69 | 10,186.69 | 3,463.31 | 2/1/08 | 39 |
| 249.69 | 100.31 | 39,936.38 | 10,436.38 | 3,563.62 | 3/1/08 | 40 |
| 249.06 | 100.94 | 39,835.44 | 10,685.44 | 3,664.56 | 4/1/08 | 41 |
| 248.43 | 101.57 | 39,733.87 | 10,933.87 | 3,766.13 | 5/1/08 | 42 |
| 247.80 | 102.20 | 39,631.67 | 11,181.67 | 3,868.33 | 6/1/08 | 43 |
| 247.16 | 102.84 | 39,528.83 | 11,428.83 | 3,971.17 | 7/1/08 | 44 |
| 246.52 | 103.48 | 39,425.35 | 11,675.35 | 4,074.65 | 8/1/08 | 45 |
| 245.87 | 104.13 | 39,321.22 | 11,921.22 | 4,178.78 | 9/1/08 | 46 |
| 245.22 | 104.78 | 39,216.44 | 12,166.44 | 4,283.56 | 10/1/08 | 47 |
| 244.57 | 105.43 | 39,111.01 | 12,411.01 | 4,388.99 | 11/1/08 | 48 |
| 243.91 | 106.09 | 39,004.92 | 12,654.92 | 4,495.08 | 12/1/08 | 49 |
| 243.25 | 106.75 | 38,898.17 | 12,898.17 | 4,601.83 | 1/1/09 | 50 |
| 242.59 | 107.41 | 38,790.76 | 13,140.76 | 4,709.24 | 2/1/09 | 51 |
| 241.92 | 108.08 | 38,682.68 | 13,382.68 | 4,817.32 | 3/1/09 | 52 |
| 241.24 | 108.76 | 38,573.92 | 13,623.92 | 4,926.08 | 4/1/09 | 53 |
| 240.56 | 109.44 | 38,464.48 | 13,864.48 | 5,035.52 | 5/1/09 | 54 |
| 239.88 | 110.12 | 38,354.36 | 14,104.36 | 5,145.64 | 6/1/09 | 55 |
| 239.19 | 110.81 | 38,243.55 | 14,343.55 | 5,256.45 | 7/1/09 | 56 |
| 238.50 | 111.50 | 38,132.05 | 14,582.05 | 5,367.95 | 8/1/09 | 57 |
| 237.81 | 112.19 | 38,019.86 | 14,819.86 | 5,480.14 | 9/1/09 | 58 |
| 237.11 | 112.89 | 37,906.97 | 15,056.97 | 5,593.03 | 10/1/09 | 59 |
| 236.40 | 113.60 | 37,793.37 | 15,293.37 | 5,706.63 | 11/1/09 | 60 |
| 235.70 | 114.30 | 37,679.07 | 15,529.07 | 5,820.93 | 12/1/09 | 61 |
| 234.98 | 115.02 | 37,564.05 | 15,764.05 | 5,935.95 | 1/1/10 | 62 |
| 234.27 | 115.73 | 37,448.32 | 15,998.32 | 6,051.68 | 2/1/10 | 63 |
| 233.54 | 116.46 | 37,331.86 | 16,231.86 | 6,168.14 | 3/1/10 | 64 |
| 232.82 | 117.18 | 37,214.68 | 16,464.68 | 6,285.32 | 4/1/10 | 65 |
| 232.09 | 117.91 | 37,096.77 | 16,696.77 | 6,403.23 | 5/1/10 | 66 |
| 231.35 | 118.65 | 36,978.12 | 16,928.12 | 6,521.88 | 6/1/10 | 67 |
| 230.61 | 119.39 | 36,858.73 | 17,158.73 | 6,641.27 | 7/1/10 | 68 |
| 229.87 | 120.13 | 36,738.60 | 17,388.60 | 6,761.40 | 8/1/10 | 69 |
| 229.12 | 120.88 | 36,617.72 | 17,617.72 | 6,882.28 | 9/1/10 | 70 |
| 228.36 | 121.64 | 36,496.08 | 17,846.08 | 7,003.92 | 10/1/10 | 71 |
| 227.60 | 122.40 | 36,373.68 | 18,073.68 | 7,126.32 | 11/1/10 | 72 |
| 226.84 | 123.16 | 36,250.52 | 18,300.52 | 7,249.48 | 12/1/10 | 73 |
| 226.07 | 123.93 | 36,126.59 | 18,526.59 | 7,373.41 | 1/1/11 | 74 |
| 225.30 | 124.70 | 36,001.89 | 18,751.89 | 7,498.11 | 2/1/11 | 75 |
| 224.52 | 125.48 | 35,876.41 | 18,976.41 | 7,623.59 | 3/1/11 | 76 |
| 223.74 | 126.26 | 35,750.15 | 19,200.15 | 7,749.85 | 4/1/11 | 77 |
| 222.95 | 127.05 | 35,623.10 | 19,423.10 | 7,876.90 | 5/1/11 | 78 |
| 222.16 | 127.84 | 35,495.26 | 19,645.26 | 8,004.74 | 6/1/11 | 79 |
| 221.36 | 128.64 | 35,366.62 | 19,866.62 | 8,133.38 | 7/1/11 | 80 |
| 220.56 | 129.44 | 35,237.18 | 20,087.18 | 8,262.82 | 8/1/11 | 81 |
| 219.75 | 130.25 | 35,106.93 | 20,306.93 | 8,393.07 | 9/1/11 | 82 |
| 218.94 | 131.06 | 34,975.87 | 20,525.87 | 8,524.13 | 10/1/11 | 83 |
| 218.12 | 131.88 | 34,843.99 | 20,743.99 | 8,656.01 | 11/1/11 | 84 |
| 217.30 | 132.70 | 34,711.29 | 20,961.29 | 8,788.71 | 12/1/11 | 85 |
| 216.47 | 133.53 | 34,577.76 | 21,177.76 | 8,922.24 | 1/1/12 | 86 |
| 215.64 | 134.36 | 34,443.40 | 21,393.40 | 9,056.60 | 2/1/12 | 87 |
| 214.80 | 135.20 | 34,308.20 | 21,608.20 | 9,191.80 | 3/1/12 | 88 |
| 213.96 | 136.04 | 34,172.16 | 21,822.16 | 9,327.84 | 4/1/12 | 89 |

Mar. 5. 2007 12:49PM    3540447070    01-0177- 4-24

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 152.45 | 197.55 | 24,248.22 | 32,898.22 | 19,251.78 | 4/1/17 | | 149 |
| 151.22 | 198.78 | 24,049.44 | 33,049.44 | 19,450.56 | 5/1/17 | | 150 |
| 149.98 | 200.02 | 23,849.42 | 33,199.42 | 19,650.58 | 6/1/17 | | 151 |
| 148.73 | 201.27 | 23,648.15 | 33,348.15 | 19,851.85 | 7/1/17 | | 152 |
| 147.48 | 202.52 | 23,445.63 | 33,495.63 | 20,054.37 | 8/1/17 | | 153 |
| 146.22 | 203.78 | 23,241.85 | 33,641.85 | 20,258.15 | 9/1/17 | | 154 |
| 144.95 | 205.05 | 23,036.80 | 33,786.80 | 20,463.20 | 10/1/17 | | 155 |
| 143.67 | 206.33 | 22,830.47 | 33,930.47 | 20,669.53 | 11/1/17 | | 156 |
| 142.38 | 207.62 | 22,622.85 | 34,072.85 | 20,877.15 | 12/1/17 | | 157 |
| 141.09 | 208.91 | 22,413.94 | 34,213.94 | 21,086.06 | 1/1/18 | | 158 |
| 139.78 | 210.22 | 22,203.72 | 34,353.72 | 21,296.28 | 2/1/18 | | 159 |
| 138.47 | 211.53 | 21,992.19 | 34,492.19 | 21,507.81 | 3/1/18 | | 160 |
| 137.15 | 212.85 | 21,779.34 | 34,629.34 | 21,720.66 | 4/1/18 | | 161 |
| 135.83 | 214.17 | 21,565.17 | 34,765.17 | 21,934.83 | 5/1/18 | | 162 |
| 134.49 | 215.51 | 21,349.66 | 34,899.66 | 22,150.34 | 6/1/18 | | 163 |
| 133.15 | 216.85 | 21,132.81 | 35,032.81 | 22,367.19 | 7/1/18 | | 164 |
| 131.79 | 218.21 | 20,914.60 | 35,164.60 | 22,585.40 | 8/1/18 | | 165 |
| 130.43 | 219.57 | 20,695.03 | 35,295.03 | 22,804.97 | 9/1/18 | | 166 |
| 129.06 | 220.94 | 20,474.09 | 35,424.09 | 23,025.91 | 10/1/18 | | 167 |
| 127.68 | 222.32 | 20,251.77 | 35,551.77 | 23,248.23 | 11/1/18 | | 168 |
| 126.30 | 223.70 | 20,028.07 | 35,678.07 | 23,471.93 | 12/1/18 | | 169 |
| 124.90 | 225.10 | 19,802.97 | 35,802.97 | 23,697.03 | 1/1/19 | | 170 |
| 123.50 | 226.50 | 19,576.47 | 35,926.47 | 23,923.53 | 2/1/19 | | 171 |
| 122.09 | 227.91 | 19,348.56 | 36,048.56 | 24,151.44 | 3/1/19 | | 172 |
| 120.67 | 229.33 | 19,119.23 | 36,169.23 | 24,380.77 | 4/1/19 | | 173 |
| 119.24 | 230.76 | 18,888.47 | 36,288.47 | 24,611.53 | 5/1/19 | | 174 |
| 117.80 | 232.20 | 18,656.27 | 36,406.27 | 24,843.73 | 6/1/19 | | 175 |
| 116.35 | 233.65 | 18,422.62 | 36,522.62 | 25,077.38 | 7/1/19 | | 176 |
| 114.89 | 235.11 | 18,187.51 | 36,637.51 | 25,312.49 | 8/1/19 | | 177 |
| 113.42 | 236.58 | 17,950.93 | 36,750.93 | 25,549.07 | 9/1/19 | | 178 |
| 111.95 | 238.05 | 17,712.88 | 36,862.88 | 25,787.12 | 10/1/19 | | 179 |
| 110.46 | 239.54 | 17,473.34 | 36,973.34 | 26,026.66 | 11/1/19 | | 180 |
| 108.97 | 241.03 | 17,232.31 | 37,082.31 | 26,267.69 | 12/1/19 | | 181 |
| 107.47 | 242.53 | 16,989.78 | 37,189.78 | 26,510.22 | 1/1/20 | | 182 |
| 105.96 | 244.04 | 16,745.74 | 37,295.74 | 26,754.26 | 2/1/20 | | 183 |
| 104.43 | 245.57 | 16,500.17 | 37,400.17 | 26,999.83 | 3/1/20 | | 184 |
| 102.90 | 247.10 | 16,253.07 | 37,503.07 | 27,246.93 | 4/1/20 | | 185 |
| 101.36 | 248.64 | 16,004.43 | 37,604.43 | 27,495.57 | 5/1/20 | | 186 |
| 99.81 | 250.19 | 15,754.24 | 37,704.24 | 27,745.76 | 6/1/20 | | 187 |
| 98.25 | 251.75 | 15,502.49 | 37,802.49 | 27,997.51 | 7/1/20 | | 188 |
| 96.68 | 253.32 | 15,249.17 | 37,899.17 | 28,250.83 | 8/1/20 | | 189 |
| 95.10 | 254.90 | 14,994.27 | 37,994.27 | 28,505.73 | 9/1/20 | | 190 |
| 93.51 | 256.49 | 14,737.78 | 38,087.78 | 28,762.22 | 10/1/20 | | 191 |
| 91.91 | 258.09 | 14,479.69 | 38,179.69 | 29,020.31 | 11/1/20 | | 192 |
| 90.30 | 259.70 | 14,219.99 | 38,269.99 | 29,280.01 | 12/1/20 | | 193 |
| 88.68 | 261.32 | 13,958.67 | 38,358.67 | 29,541.33 | 1/1/21 | | 194 |
| 87.05 | 262.95 | 13,695.72 | 38,445.72 | 29,804.28 | 2/1/21 | | 195 |
| 85.41 | 264.59 | 13,431.13 | 38,531.13 | 30,068.87 | 3/1/21 | | 196 |
| 83.76 | 266.24 | 13,164.89 | 38,614.89 | 30,335.11 | 4/1/21 | | 197 |
| 82.10 | 267.90 | 12,896.99 | 38,696.99 | 30,603.01 | 5/1/21 | | 198 |
| 80.43 | 269.57 | 12,627.42 | 38,777.42 | 30,872.58 | 6/1/21 | | 199 |
| 78.75 | 271.25 | 12,356.17 | 38,856.17 | 31,143.83 | 7/1/21 | | 200 |
| 77.06 | 272.94 | 12,083.23 | 38,933.23 | 31,416.77 | 8/1/21 | | 201 |
| 75.36 | 274.64 | 11,808.59 | 39,008.59 | 31,691.41 | 9/1/21 | | 202 |
| 73.64 | 276.36 | 11,532.23 | 39,082.23 | 31,967.77 | 10/1/21 | | 203 |
| 71.92 | 278.08 | 11,254.15 | 39,154.15 | 32,245.85 | 11/1/21 | | 204 |
| 70.19 | 279.81 | 10,974.34 | 39,224.34 | 32,525.66 | 12/1/21 | | 205 |
| 68.44 | 281.56 | 10,692.78 | 39,292.78 | 32,807.22 | 1/1/22 | | 206 |
| 66.68 | 283.32 | 10,409.46 | 39,359.46 | 33,090.54 | 2/1/22 | | 207 |




01-9177-4 24

| | | | | | | |
|---|---|---|---|---|---|---|
| 213.11 | 136.89 | 34,035.27 | 22,035.27 | 9,464.73 | 5/1/12 | 90 |
| 212.26 | 137.74 | 33,897.53 | 22,247.53 | 9,602.47 | 6/1/12 | 91 |
| 211.40 | 138.60 | 33,758.93 | 22,458.93 | 9,741.07 | 7/1/12 | 92 |
| 210.53 | 139.47 | 33,619.46 | 22,669.46 | 9,880.54 | 8/1/12 | 93 |
| 209.66 | 140.34 | 33,479.12 | 22,879.12 | 10,020.88 | 9/1/12 | 94 |
| 208.79 | 141.21 | 33,337.91 | 23,087.91 | 10,162.09 | 10/1/12 | 95 |
| 207.91 | 142.09 | 33,195.82 | 23,295.82 | 10,304.18 | 11/1/12 | 96 |
| 207.02 | 142.98 | 33,052.84 | 23,502.84 | 10,447.16 | 12/1/12 | 97 |
| 206.13 | 143.87 | 32,908.97 | 23,708.97 | 10,591.03 | 1/1/13 | 98 |
| 205.23 | 144.77 | 32,764.20 | 23,914.20 | 10,735.80 | 2/1/13 | 99 |
| 204.33 | 145.67 | 32,618.53 | 24,118.53 | 10,881.47 | 3/1/13 | 100 |
| 203.42 | 146.58 | 32,471.95 | 24,321.95 | 11,028.05 | 4/1/13 | 101 |
| 202.51 | 147.49 | 32,324.46 | 24,524.46 | 11,175.54 | 5/1/13 | 102 |
| 201.59 | 148.41 | 32,176.05 | 24,726.05 | 11,323.95 | 6/1/13 | 103 |
| 200.66 | 149.34 | 32,026.71 | 24,926.71 | 11,473.29 | 7/1/13 | 104 |
| 199.73 | 150.27 | 31,876.44 | 25,126.44 | 11,623.56 | 8/1/13 | 105 |
| 198.79 | 151.21 | 31,725.23 | 25,325.23 | 11,774.77 | 9/1/13 | 106 |
| 197.85 | 152.15 | 31,573.08 | 25,523.08 | 11,926.92 | 10/1/13 | 107 |
| 196.90 | 153.10 | 31,419.98 | 25,719.98 | 12,080.02 | 11/1/13 | 108 |
| 195.95 | 154.05 | 31,265.93 | 25,915.93 | 12,234.07 | 12/1/13 | 109 |
| 194.99 | 155.01 | 31,110.92 | 26,110.92 | 12,389.08 | 1/1/14 | 110 |
| 194.02 | 155.98 | 30,954.94 | 26,304.94 | 12,545.06 | 2/1/14 | 111 |
| 193.05 | 156.95 | 30,797.99 | 26,497.99 | 12,702.01 | 3/1/14 | 112 |
| 192.07 | 157.93 | 30,640.06 | 26,690.06 | 12,859.94 | 4/1/14 | 113 |
| 191.08 | 158.92 | 30,481.14 | 26,881.14 | 13,018.86 | 5/1/14 | 114 |
| 190.09 | 159.91 | 30,321.23 | 27,071.23 | 13,178.77 | 6/1/14 | 115 |
| 189.10 | 160.90 | 30,160.33 | 27,260.33 | 13,339.67 | 7/1/14 | 116 |
| 188.09 | 161.91 | 29,998.42 | 27,448.42 | 13,501.58 | 8/1/14 | 117 |
| 187.08 | 162.92 | 29,835.50 | 27,635.50 | 13,664.50 | 9/1/14 | 118 |
| 186.07 | 163.93 | 29,671.57 | 27,821.57 | 13,828.43 | 10/1/14 | 119 |
| 185.04 | 164.96 | 29,506.61 | 28,006.61 | 13,993.39 | 11/1/14 | 120 |
| 184.02 | 165.98 | 29,340.63 | 28,190.63 | 14,159.37 | 12/1/14 | 121 |
| 182.98 | 167.02 | 29,173.61 | 28,373.61 | 14,326.39 | 1/1/15 | 122 |
| 181.94 | 168.06 | 29,005.55 | 28,555.55 | 14,494.45 | 2/1/15 | 123 |
| 180.89 | 169.11 | 28,836.44 | 28,736.44 | 14,663.56 | 3/1/15 | 124 |
| 179.84 | 170.16 | 28,666.28 | 28,916.28 | 14,833.72 | 4/1/15 | 125 |
| 178.77 | 171.23 | 28,495.05 | 29,095.05 | 15,004.95 | 5/1/15 | 126 |
| 177.71 | 172.29 | 28,322.76 | 29,272.76 | 15,177.24 | 6/1/15 | 127 |
| 176.63 | 173.37 | 28,149.39 | 29,449.39 | 15,350.61 | 7/1/15 | 128 |
| 175.55 | 174.45 | 27,974.94 | 29,624.94 | 15,525.06 | 8/1/15 | 129 |
| 174.46 | 175.54 | 27,799.40 | 29,799.40 | 15,700.60 | 9/1/15 | 130 |
| 173.37 | 176.63 | 27,622.77 | 29,972.77 | 15,877.23 | 10/1/15 | 131 |
| 172.27 | 177.73 | 27,445.04 | 30,145.04 | 16,054.96 | 11/1/15 | 132 |
| 171.16 | 178.84 | 27,266.20 | 30,316.20 | 16,233.80 | 12/1/15 | 133 |
| 170.04 | 179.96 | 27,086.24 | 30,486.24 | 16,413.76 | 1/1/16 | 134 |
| 168.92 | 181.08 | 26,905.16 | 30,655.16 | 16,594.84 | 2/1/16 | 135 |
| 167.79 | 182.21 | 26,722.95 | 30,822.95 | 16,777.05 | 3/1/16 | 136 |
| 166.66 | 183.34 | 26,539.61 | 30,989.61 | 16,960.39 | 4/1/16 | 137 |
| 165.51 | 184.49 | 26,355.12 | 31,155.12 | 17,144.88 | 5/1/16 | 138 |
| 164.36 | 185.64 | 26,169.48 | 31,319.48 | 17,330.52 | 6/1/16 | 139 |
| 163.20 | 186.80 | 25,982.68 | 31,482.68 | 17,517.32 | 7/1/16 | 140 |
| 162.04 | 187.96 | 25,794.72 | 31,644.72 | 17,705.28 | 8/1/16 | 141 |
| 160.87 | 189.13 | 25,605.59 | 31,805.59 | 17,894.41 | 9/1/16 | 142 |
| 159.69 | 190.31 | 25,415.28 | 31,965.28 | 18,084.72 | 10/1/16 | 143 |
| 158.50 | 191.50 | 25,223.78 | 32,123.78 | 18,276.22 | 11/1/16 | 144 |
| 157.31 | 192.69 | 25,031.09 | 32,281.09 | 18,468.91 | 12/1/16 | 145 |
| 156.10 | 193.90 | 24,837.19 | 32,437.19 | 18,662.81 | 1/1/17 | 146 |
| 154.90 | 195.10 | 24,642.09 | 32,592.09 | 18,857.91 | 2/1/17 | 147 |
| 153.68 | 196.32 | 24,445.77 | 32,745.77 | 19,054.23 | 3/1/17 | 148 |

01-0177-4 4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 64.92 | 285.08 | 10,124.38 | 39,424.38 | 33,375.62 | 3/1/22 | | 208 |
| 63.14 | 286.86 | 9,837.52 | 39,487.52 | 33,662.48 | 4/1/22 | | 209 |
| 61.35 | 288.65 | 9,548.87 | 39,548.87 | 33,951.13 | 5/1/22 | | 210 |
| 59.55 | 290.45 | 9,258.42 | 39,608.42 | 34,241.58 | 6/1/22 | | 211 |
| 57.74 | 292.26 | 8,966.16 | 39,666.16 | 34,533.84 | 7/1/22 | | 212 |
| 55.92 | 294.08 | 8,672.08 | 39,722.08 | 34,827.92 | 8/1/22 | | 213 |
| 54.08 | 295.92 | 8,376.16 | 39,776.16 | 35,123.84 | 9/1/22 | | 214 |
| 52.24 | 297.76 | 8,078.40 | 39,828.40 | 35,421.60 | 10/1/22 | | 215 |
| 50.38 | 299.62 | 7,778.78 | 39,878.78 | 35,721.22 | 11/1/22 | | 216 |
| 48.51 | 301.49 | 7,477.29 | 39,927.29 | 36,022.71 | 12/1/22 | | 217 |
| 46.63 | 303.37 | 7,173.92 | 39,973.92 | 36,326.08 | 1/1/23 | | 218 |
| 44.74 | 305.26 | 6,868.66 | 40,018.66 | 36,631.34 | 2/1/23 | | 219 |
| 42.84 | 307.16 | 6,561.50 | 40,061.50 | 36,938.50 | 3/1/23 | | 220 |
| 40.92 | 309.08 | 6,252.42 | 40,102.42 | 37,247.58 | 4/1/23 | | 221 |
| 38.99 | 311.01 | 5,941.41 | 40,141.41 | 37,558.59 | 5/1/23 | | 222 |
| 37.05 | 312.95 | 5,628.46 | 40,178.46 | 37,871.54 | 6/1/23 | | 223 |
| 35.10 | 314.90 | 5,313.56 | 40,213.56 | 38,186.44 | 7/1/23 | | 224 |
| 33.14 | 316.86 | 4,996.70 | 40,246.70 | 38,503.30 | 8/1/23 | | 225 |
| 31.16 | 318.84 | 4,677.86 | 40,277.86 | 38,822.14 | 9/1/23 | | 226 |
| 29.17 | 320.83 | 4,357.03 | 40,307.03 | 39,142.97 | 10/1/23 | | 227 |
| 27.17 | 322.83 | 4,034.20 | 40,334.20 | 39,465.80 | 11/1/23 | | 228 |
| 25.16 | 324.84 | 3,709.36 | 40,359.36 | 39,790.64 | 12/1/23 | | 229 |
| 23.13 | 326.87 | 3,382.49 | 40,382.49 | 40,117.51 | 1/1/24 | | 230 |
| 21.09 | 328.91 | 3,053.58 | 40,403.58 | 40,446.42 | 2/1/24 | | 231 |
| 19.04 | 330.96 | 2,722.62 | 40,422.62 | 40,777.38 | 3/1/24 | | 232 |
| 16.98 | 333.02 | 2,389.60 | 40,439.60 | 41,110.40 | 4/1/24 | | 233 |
| 14.90 | 335.10 | 2,054.50 | 40,454.50 | 41,445.50 | 5/1/24 | | 234 |
| 12.81 | 337.19 | 1,717.31 | 40,467.31 | 41,782.69 | 6/1/24 | | 235 |
| 10.71 | 339.29 | 1,378.02 | 40,478.02 | 42,121.98 | 7/1/24 | | 236 |
| 8.59 | 341.41 | 1,036.61 | 40,486.61 | 42,463.39 | 8/1/24 | | 237 |
| 6.46 | 343.54 | 693.07 | 40,493.07 | 42,806.93 | 9/1/24 | | 238 |
| 4.32 | 345.68 | 347.39 | 40,497.39 | 43,152.61 | 10/1/24 | | 239 |
| 2.17 | 347.39 | 0.00 | 40,499.56 | 43,500.00 | 11/1/24 | | 240 |



## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

JERRY MORGAN and        *
EMMA MORGAN,             *
                               *

       **Plaintiffs,**         *

                               *

**vs.**                                  *          **Case No. CV-07-44**
                               *

**STANLEY SHAW and**       *
**GORDON BROWN**          *
                               *

       **Defendants.**        *



### AFFIDAVIT OF STANLEY SHAW

KNOW ALL MEN BY THESE PRESENTS:

Before me, the undersigned authority, on this day personally appeared Stanley Shaw, who being duly sworn, deposed, and stated upon his oath the following:

1. My name is Stanley Shaw. I am one of the Defendants in the above-styled suit.

2. I am not a resident citizen of Alabama. I have resided at 6885 West Point Road, LaGrange, Georgia since 1999.

3. Attached hereto as exhibit "1" is a copy of the policy and renewal certificate I received from State Farm Fire and Casualty Company covering the home made the subject of this suit.

4. Attached as exhibit "2" is a copy of the receipt reflecting payment under that policy in the amount of $58,525.95 for fire damage and debris removal to the premises made the subject of this suit.

Further the Affiant saith not.

_____
**STANLEY SHAW**

STATE OF ALABAMA     )
_Chamber_ COUNTY )

SWORN TO AND SUBSCRIBED before me this the 29 day of March, 2007.

_____
NOTARY PUBLIC
My Commission Expires: _____

RONALD J. SANDERS
Notary Public, AL State at Large
My Comm. Expires Aug. 21, 2008



State Farm Fire and Casualty Company
A Stock Company With Home Offices in Bloomington, Illinois

**DECLARATIONS PAGE**

100 State Farm Parkway
Birmingham, AL  35297-0001

AMENDED MAR 11 2005

| Policy Number | 93-CH-4732-6 |
| --- | --- |

| Policy Period | Effective Date | Expiration Date |
| --- | --- | --- |
| 12 Months | NOV 27 2004 | NOV 27 2005 |

The policy period begins and ends at 12:01 am standard time at the residence premises.

· **Named Insured**

B-1520-F282  F R

BROWN, GORDON L &
SHAW, STANLEY
519 N LANIER AVE
LANETT AL  36863-2021

**Mortgagee**

FIRST FLAG BANK LAGRANGE
IST SUCCESSORS &/OR ASSIGNS
PO BOX 3007
LAGRANGE GA  30241-0062

---

## RENTAL DWELLING POLICY- SPECIAL FORM 3

**Automatic Renewal** - If the **policy period** is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Premises
217 GLASS RD
VALLEY AL 36854-4366

Your policy is amended MAR 11 2005
INSURED NAME AND/OR ADDRESS CHANGE

Named Insured: Individual

---

| Coverages & Property | Limits of Liability | |
| --- | --- | --- |
| **Section I** | | |
| A Dwelling | $ | 54,700 |
| Dwelling Extension | $ | 5,470 |
| B Personal Property | $ | 2,735 |
| C Loss of Rents | Actual Loss | |
| **Section II** | | |
| L Business Liability | | |
| (Each Occurrence) | $ | 300,000 |
| Annual Aggregate | $ | 600,000 |
| M Medical Payments | | |
| (Each Person) | $ | 1,000 |

Inflation Coverage Index: 187.9

**Deductibles - Section I**

| Basic | $ | 500 |
| --- | --- | --- |

In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to policy.

---

**Forms, Options, & Endorsements**

| | |
| --- | --- |
| Special Form 3 | FP-8103.3 |
| Modified Replacement Cost | FE-7466.1 |
| Debris Removal Endorsement | FE-7540 |
| Bodily Injury Amended Defin | FE-8654 |
| Fungus (Including Mold) Excl | FE-5722 |
| Amendatory Subrogation Cond | FE-5841 |

**Endorsement Premium**          None

Discount Applied:
  Home Alert

DEFENDANT'S EXHIBIT
1 to C

---

—————— Other limits and exclusions may apply - refer to your policy ——————

Your policy consists of this page, any endorsements and the policy form. Please keep these together.

FP-8008C

1299   251  I

N          Prepared    MAR 24 2005

DONNY HOLLEY
334-644-2111

555-7020.1  Rev. 10-2002 (o1f039fc)

STATE FARM INSURANCE COMPANIES

※ State Farm Fire and Casualty Company

100 State Farm Parkway
Birmingham, AL 35297-0001

B-1520-F282  F R

BROWN, GORDON L &
SHAW, STANLEY
515 N LANIER AVE
LANETT AL  36863-2021

|ıIıILıILıılıılıILıııIııılIılllıııılıılıılIıldıılıılı

Location:  217 GLASS RD
VALLEY AL

SFPP No:  0406162509

Mortgagee:  FLAG BANK

**Forms, Options, and Endorsements**
Special Form 3                      FP-8103.3
Modified Replacement Cost           FE-7466.1
Debris Removal Endorsement          FE-7540
Bodily Injury Amended Defin         FE-8654
Fungus (Including Mold) Excl        FE-5722
Amendatory Subrogation Cond         FE-5841

**RENEWAL CERTIFICATE**

| POLICY NUMBER | 93-CH-4732-6 |
|---|---|

Rental Dwelling Pol - Special Form
NOV 27 2004 to NOV 27 2005

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| BILLED THROUGH SFPP | |

**Coverages and Limits**
**Section I**
| | | |
|---|---|---|
| A  Dwelling | | $54,700 |
| Dwelling Extension | | 5,470 |
| B  Personal Property | | 2,735 |
| C  Loss of Rents | | Actual Loss |

**Deductibles - Section I**
| Basic | 500 |
|---|---|

**Section II**
| | | |
|---|---|---|
| L  Business Liab (per occurrence) | | $300,000 |
| (annual aggregate) | | 600,000 |
| M  Medical Payments to Others | | 1,000 |
| (each person) | | |

**Annual Premium**                                  $483.00

**Premium Reductions**
Your premium has already been reduced
by the following:
Home Alert Discount                              8.00

Inflation Coverage Index:   187.9

The State Farm replacement cost is an estimated replacement cost based on general information about your
rental dwelling.  It is developed from models that use cost of construction materials and labor rates for
like dwellings in the area.  The actual cost to replace your dwelling may be significantly different.
State Farm does not guarantee that this figure will represent the actual cost to replace your dwelling.
You are responsible for selecting the appropriate amount of coverage and you may obtain an appraisal or
contractor estimate which State Farm will consider and accept, if reasonable.  Higher coverage amounts
may be selected and will result in higher premiums.

38 3248 1855

*See reverse side for important information.
Please keep this part for your record.*

*Thanks for letting us serve you...*
Agent   DONNY HOLLEY
Telephone   (334) 644-2111

Prepared  OCT 11 2004

DEFENDANT'S
EXHIBIT
2 to C

CLAIM NO  01-Q177-424          POLICY NO  93-CH4732-6

| Coverage Description | Amount | COL/Line | Pay Cd |
|---|---|---|---|
| Fire/Lightning - Building | $58,525.95 | 33/001 | 1 |

LOSS DATE  3/02/2005

REMARKS

POLICY LIMIT $55,739.00 + 5% DEBRIS REMOVAL

RETAIN STUB FOR RECORDS

AUTHORIZED BY  TILLERY, JEFF
PHONE  (334) 501-1032

PAYMENT NO  1 09 645451 J
DATE  3/18/2005
AMOUNT  $58,525.95
TIN

FP-8103.3
(5/88)



YOUR
STATE FARM
RENTAL DWELLING
POLICY



FP-8103.3
(5/88)

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

|  | Begins on Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **SECTION I - YOUR PROPERTY** | |
| COVERAGES | |
| Coverage A - Dwelling | 2 |
| Coverage B - Personal Property | 2 |
| Coverage C - Loss of Rents | 2 |
| Additional Coverages | 3 |
| Inflation Coverage | 3 |
| LOSSES INSURED | 5 |
| LOSSES NOT INSURED | 5 |
| CONDITIONS | 7 |
| **SECTION II - YOUR LIABILITY** | |
| COVERAGES | |
| Coverage L - Business Liability | 9 |
| Coverage M - Premises Medical Payments | 9 |
| EXCLUSIONS | 10 |
| ADDITIONAL COVERAGES | 10 |
| CONDITIONS | 13 |
| **SECTION I AND II - CONDITIONS** | 13 |
| **OPTIONAL PROVISIONS** | 14 |
|  | 15 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-8103.3
(5/88)

Printed in U.S.A.

## RENTAL DWELLING POLICY - SPECIAL FORM 3

### AGREEMENT

We agree to provide the insurance described in this policy. provisions of this policy.
You agree to pay premiums when due and comply with the

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. **Bodily injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

2. "**contract**" means any written **contract** or agreement wherein the **named insured** has expressly assumed liability for damages to which this policy applies.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. "**insured**" means:

   a. if the **named insured** is designated in the **Declarations** as an individual and is a sole proprietor, the **named insured** and spouse;

   b. if the **named insured** is designated in the **Declarations** as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof;

   c. if the **named insured** is designated in the **Declarations** as other than an individual, partnership or joint venture, the organization trustees, directors or governors or stockholder thereof while acting within the scope of their duties;

   d. any employee of the **named insured** while acting within the scope of that employment;

   e. any person or organization while acting as real estate manager for the **named insured**.

   The insurance afforded applies separately to each **insured** against whom claim is made, or suit is brought, except with respect to the limit of our Company's liability.

   This insurance does not apply to **bodily injury** or **personal injury** or **property damage** arising out of the conduct of any partnership or joint venture which is not designated in this policy as a **named insured**.

5. "**insured premises**" means:

   a. the **residence premises**;

   b. one or two family premises of which you acquire ownership or control and for which you report your intention to insure under this policy within 30 days after acquisition;

   c. the ways immediately adjoining on land; and

   d. one or two family dwelling premises alienated by any **insured** if possession has been given to others.

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured premises** is not a **motor vehicle**;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by any **insured** and designed for recreational use off public roads, while off an **insured premises**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;

d. a motorized bicycle, tricycle or similar type of equipment owned by any **insured** while off an **insured premises**;

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c., or 6.d.

7. **"named insured"** means the person or organization named in the **Declarations** of this policy.

8. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**;

b. **property damage**; or

c. **personal injury**,

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

9. **"personal injury"** means injury arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment or malicious prosecution;

b. libel, slander or defamation of character; or

c. invasion of privacy, wrongful eviction or wrongful entry.

10. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not considered to be **property damage**.

11. **"residence premises"** means the one or two family dwelling, other structures, and grounds which is shown in the **Declarations**.

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

We cover:

1. the dwelling on the **residence premises** shown in the **Declarations** used principally as a private residence, including structures attached to the dwelling;

2. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

3. wall-to-wall carpeting attached to the dwelling on the **residence premises**; and

4. outdoor antennas.

Except as specifically provided in the **SECTION I, ADDITIONAL COVERAGES**, for **Land**, we do not cover land or any costs required to replace, rebuild, stabilize or otherwise restore the land.

**Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

1. not permanently attached to or otherwise forming a part of the realty;

2. used in whole or in part for commercial, manufacturing or farming purposes; or

3. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE B - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** which is rented or held for rental with the **residence premises** or used for the maintenance of the **residence premises**. This coverage applies only while the personal property is on the **residence premises** or temporarily off premises for repairs.

2

FORM 3

**Property Not Covered.** We do not cover ~~articles~~ s

1. articles separately described and specifically insured in this or any other insurance;

2. animals, birds or fish;

3. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those used solely for the service of the **residence premises** and not licensed for use on public highways;

4. watercraft, including motors, equipment and accessories;

5. aircraft and parts;

6. outdoor signs.

## COVERAGE C - LOSS OF RENTS

The limit of liability for Coverage C is the total limit for all the following coverages.

1. **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not exceeding 12 consecutive months from the date of loss. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

2. **Prohibited Use.** If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Loss Insured in this policy, we cover any resulting Fair Rental Value loss for a period not exceeding two weeks during which use is prohibited.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expense incurred by you in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Losses Insured: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. This coverage may increase the limit of liability otherwise applicable. We do not cover property grown for business purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by **contract** or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being moved from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while moved. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Personal Effects.** We will pay up to $500 for loss at the **residence premises** caused by a Loss Insured to personal effects of others while such property is in your

FORM

care, custody or control. This coverage is subject to the limitations and exclusions applicable to Coverage B - Personal Property. This coverage is limited to $100 per person and does not increase the limit of liability applying to Coverage B - Personal Property.

7. **Burglary**. We will pay for loss of personal property owned or used by any **insured** which is rented or held for rental with the **residence premises**, when the loss is from a known location within a building on the **residence premises** when it is probable that the property has been stolen and there is visible evidence of forcible entry to or forcible exit from that building. This coverage does not increase the limit of liability applying to Coverage B - Personal Property.

8. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Land**. We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

    We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

    One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

11. **Collapse**. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

    a. fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy;

       (1) falling objects does not include loss of or damage to:

           (a) personal property in the open; or

           (b) the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;

       (2) water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam;

    b. hidden decay;

    c. hidden insect or vermin damage;

    d. weight of contents, equipment, animals or people;

    e. weight of ice, snow, sleet or rain which collects on a roof; or

    f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

3

4

FORM 3

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then
2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy, the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING AND COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:

   a. collapse, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

   e. theft of any property which is not actually part of any building or structure;

   f. mysterious disappearance;

   g. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   h. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

5

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

i.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

j.  rust, mold, or wet or dry rot;

k.  contamination;

l.  smog, smoke from agricultural smudging or industrial operations;

m.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

n.  birds, vermin, rodents, insects or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section.

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

a.  **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake,

landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c.  **Water Damage**, meaning:

(1)  flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2)  water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3)  natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for direct loss by fire, explosion, or theft resulting from water damage.

d.  **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Loss Insured.

e.  **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by

3

6

FORM 3

the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, construction, grading, compaction;

      (3) materials used in construction or repair; or

      (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**.

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; nor

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;

   b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

      (3) submit to examinations under oath and subscribe the same;

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged personal property described in 2.c.;

      (7) records supporting the fair rental value loss.

FORM

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. Personal property and structures that are not buildings at actual cash value, up to the applicable limit of liability, at the time of loss. There may be deduction for depreciation. We will not pay an amount exceeding that necessary to repair or replace;

   b. Carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

   c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:

      (1) We will not pay more than the $10,000 limit on **Land** as provided in **SECTION I, ADDITIONAL COVERAGES.**

      (2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

         (a) the limit of liability under this policy applying to the building;

         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

         (c) the amount actually and necessarily spent to repair or replace the damaged building.

      (3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

      (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property.

Any property we pay for or replace becomes our property.

10. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property**. We need not accept any property abandoned by any **insured**.

12. **Mortgage Clause**. The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        (2) pays any premium due under this policy on demand if you have neglected to pay the premium;

        (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of

your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

    d. If we pay the mortgagee for any loss and deny payment to you:

        (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

        (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee**. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - BUSINESS LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury, personal injury,** or **property damage** to which this coverage applies, caused by an **occurrence,** and which arises from the ownership, maintenance, or use of the **insured premises,** we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence,** equals our limit of liability.

9

FO

The total limit of the Company's liability for all occurrences in any one policy year shall not exceed the annual aggregate limit shown in the **Declarations** for Coverage L - Business Liability.

## COVERAGE M - PREMISES MEDICAL PAYMENTS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury** which arises out of a condition on the **insured premises** or for which the **insured** is provided **bodily injury** liability coverage under this policy. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.

## SECTION II - EXCLUSIONS

1. **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** do not apply to:

   a. **bodily injury, personal injury,** or **property damage:**

      (1) which is either expected or intended by an **insured;** or

      (2) to any person or property which is the result of willful and malicious acts of an **insured;**

   b. **bodily injury, personal injury,** or **property damage** arising out of the rendering or failing to render professional services;

   c. **bodily injury, personal injury,** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

      (1) aircraft;

      (2) any **motor vehicle** owned or operated by, or rented or loaned to any **insured;** or

      (3) any watercraft owned by or operated by, or rented or loaned to any **insured;**

   d. **bodily injury, personal injury,** or **property damage** arising out of:

      (1) the entrustment by any **insured** to any person;

      (2) the negligent supervision by any **insured** of any person;

      (3) any liability statutorily imposed on any **insured;** or

      (4) any liability assumed through an unwritten or written agreement by any **insured;**

   with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

   e. **bodily injury, personal injury,** or **property damage** caused directly or indirectly by war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

   f. **bodily injury, personal injury,** or **property damage** arising out of premises, other than the **insured premises,** or to liability assumed by the **insured** under any **contract** or agreement relating to such premises;

   g. to **bodily injury** or **property damage** for which the **insured** may be held liable:

      (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or

      (2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

         (a) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverages; or

         (b) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or

M 3

10

FORM 3

which causes or contributes to the intoxication of any person,
but part (b) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;

h.  the legal liability of any **insured** to:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**;

(2) any person who makes a claim because of **bodily injury** or **property damage** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**;

i.  **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants:

(1) at or from premises owned, rented or occupied by the **named insured**;

(2) at or from any site or location used by or for the **named insured** or others for the handling, storage, disposal, processing or treatment of waste;

(3) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **named insured** or any person or organization for whom the **named insured** may be legally responsible; or

(4) at or from any site or location on which **named insured**, employee or any contractor subcontractor working directly or indirectly behalf of the **named insured** is performing erations:

(a) if the pollutants are brought on or to the s or location in connection with such op ations; or

(b) if the operations are to test for, moni clean up, remove, contain, treat, detoxif neutralize pollutants.

Subparagraphs (1) and (4)(a) of this exclusion not apply to **bodily injury** or **property dam** caused by heat, smoke or fumes which result f a hostile fire or poisoning or asphyxiation due escape of fumes from a furnace or flue because a malfunction of the furnace or flue.

In addition, Coverage L and Coverage M do not ply to loss, cost or expense arising out of any g ernmental direction or request that the **named** sured test for, monitor, clean up, remove, cont treat, detoxify or neutralize pollutants;

As used in this exclusion:

"hostile fire" means one which becomes uncont lable or breaks out from where it was intended be.

"pollutants" means any solid, liquid, gaseous thermal irritant or contaminant, including smo vapor, soot, fumes, acids, alkalis, chemicals waste.

"waste" includes materials to be recycled, reco tioned or reclaimed.

j.  **bodily injury** to an employee of the **insured** aris out of and in the course of employment by the **sured** or the spouse, child, parent, brother or sis of that employee as a consequence of employm of that employee by the **insured**.

This exclusion applies:

(1) whether the **insured** may be liable as an ployer or in any other capacity; and

11

FOR

(2) to any obligation to share damages with or re-pay someone else who must pay damages be-cause of the injury;

k. **bodily injury** to you or any **insured** and if residents of your household:

(1) your relatives;

(2) any other person under the age of 21 who is in the care of an **insured**.

2. **Coverage L - Business Liability**, does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of prop-erty owners; or

(2) assumed under any unwritten **contract** or agreement, or by **contract** or agreement in connection with any business of the **insured** other than the rental of the **insured premises**;

b. **property damage** to property owned by any in-**sured**;

c. **property damage** to property rented to, occupied or used by or in the care of the **insured**;

d. **bodily injury** or **personal injury** to any person eli-gible to receive any benefits required to be provided or voluntarily provided by the **insured** under any workers' or workmen's compensation, non-occupa-tional disability or occupational disease law;

e. **bodily injury**, **personal injury**, or **property dam-age** for which any **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic En-ergy Liability Underwriters, Nuclear Insurance As-sociation of Canada, or any of their successors;

f. **personal injury** caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any **insured**;

g. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of the person by the **insured**;

h. **personal injury** arising out of any publication or utterance in item b. of the definition of **personal injury**:

(1) if the first injurious publication or utterance of the same or similar material by or on behalf of the **insured** was made prior to the effective date of this insurance; or

(2) concerning any business or services made by or at the direction of any **insured** with knowledge of the falsity;

i. **property damage** or **personal injury** to premises you sell, give away or abandon, if the **property damage**, or **personal injury** arises out of those premises.

3. **Coverage M - Premises Medical Payments** does not apply to **bodily injury**:

a. to any person, eligible to receive any benefits re-quired to be provided or voluntarily provided under any workers' or workmen's compensation, non-occupational disability or occupational disease law;

b. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncon-trolled or however caused, or any consequence of any of these;

c. to any **insured**, any tenant or other person regularly residing on the **insured premises** or to any em-ployees of any of the foregoing if the **bodily injury** arises out of or in the course of their employment;

d. to any person engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises.

FORM 3

# SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses. We pay:**

   a. expenses incurred by us and costs taxed against any **insured** in any suit we defend;

   b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage L. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting

us in the investigation or defense of any claim or suit;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense payable for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

      (3) the conduct of suits and attend hearings and trials;

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. the **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M - Premises Medical Payments.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

13

FORM 3

submit to physical examination by a physician se-
lected by us when and as often as we reasonably
require.

5. **Payment of Claim - Coverage M - Premises Med-
ical Payments**. Payment under this coverage is not an
admission of liability by any **insured** or us.

6. **Suit Against Us**. No action shall be brought against
us unless there has been compliance with the policy
provisions.

No one shall have any right to join us as a party to any
action against any **insured**. Further, no action with re-

spect to Coverage L shall be brought against us until the
obligation of the **insured** has been determined by final
judgment or agreement signed by us.

7. **Bankruptcy of any Insured**. Bankruptcy or insolvency
of any **insured** shall not relieve us of any of our obli-
gations under this policy.

8. **Other Insurance - Coverage L - Business Liability**.
This insurance is excess over any other valid and
collectible insurance except insurance written specif-
ically to cover as excess over the limits of liability that
apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period**. This policy applies only to loss under
Section I or **bodily injury**, **personal injury**, or **property
damage** under Section II which occurs during the period
this policy is in effect.

2. **Concealment or Fraud**. This policy is void as to you
and any other **insured**, if you or any other **insured** un-
der this policy has intentionally concealed or misrepre-
sented any material fact or circumstance relating to this
insurance, whether before or after a loss.

3. **Liberalization Clause**. If we adopt any revision which
would broaden coverage under this policy without ad-
ditional premium, within 60 days prior to or during the
period this policy is in effect, the broadened coverage
will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions**. A waiver or
change of any provision of this policy must be in writing
by us to be valid. Our request for an appraisal or exam-
ination shall not waive any of our rights.

5. **Cancellation**.

   a. You may cancel this policy at any time by notifying
   us in writing of the date cancellation is to take ef-
   fect. We may waive the requirement that the notice
   be in writing by confirming the date and time of
   cancellation to you in writing.

   b. We may cancel this policy only for the reasons
   stated in this condition by notifying you in writing
   of the date cancellation takes effect. This cancel-
   lation notice may be delivered to you, or mailed to

   you at your mailing address shown in the **Declara-
   tions**. Proof of mailing shall be sufficient proof of
   notice:

   (1) When you have not paid the premium, whether
   payable to us or to our agent or under any fi-
   nance or credit plan, we may cancel at any time
   by notifying you at least 10 days before the date
   cancellation takes effect.

   (2) When this policy has been in effect for less than
   60 days and is not a renewal with us, we may
   cancel for any reason by notifying you at least
   10 days before the date cancellation takes ef-
   fect.

   (3) When this policy has been in effect for 60 days
   or more, or at any time if it is a renewal with us,
   we may cancel if there has been a material
   misrepresentation of fact which, if known to us,
   would have caused us not to issue this policy or
   if the risk has changed substantially since the
   policy was issued. We may cancel this policy by
   notifying you at least 30 days before the date
   cancellation takes effect.

   (4) When this policy is written for a period longer
   than one year, we may cancel for any reason at
   anniversary by notifying you at least 30 days
   before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the
   period from the date of cancellation to the expira-
   tion date will be refunded. When you request can-

14

FORM 3

cellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** Any **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, any **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section II to Premises Medical Payments.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under this policy at the time of death.

   b. **insured** includes with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Inspection and Audit.** We shall be permitted but not obligated to inspect your property and operations at any time. However, our right to inspect or our actual inspection and report shall not constitute an undertaking on your behalf or for your benefit or the benefit of others to determine or warrant that the property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

   We may examine and audit your books and records at any time during the policy period and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the **Declarations** or Extension Certificate.

**Option AI - Named Additional Insured.** The definition of **insured** in this policy includes the person or organization named in the **Declarations** as an additional insured or whose name is on file with us with respect to:

1. Section I: **Coverage A - Dwelling;**

2. Section II: **Coverage L - Business Liability and Coverage M - Premises Medical Payments** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location show in the **Declarations**.

**Option RC - Replacement Cost - Contents.** Und **SECTION I - CONDITIONS**, items a. and b. of the Los Settlement Condition are replaced with the following:

   a. (1) Fences and the following personal property actual cash value at the time of loss:

      (a) antiques, fine arts, paintings, statuary an similar articles which by their inherent n ture cannot be replaced with new articles.

      (b) articles whose age or history contribu substantially to their value including, b

FORM

not limited to, memorabilia, souvenirs and collectors items;

(c) property not useful for its intended purpose.

(2) We will not pay:

(a) an amount exceeding that necessary to repair or replace the property; or

(b) an amount in excess of the limit of liability applying to the property.

b. Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, and other structures (except fences) that are not buildings under Dwelling Extension, at the cost of repair or replacement at the time of loss without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

(a) replacement cost at time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Kim M. Brunner*

Secretary

*Edward B Rust Jr*

President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

16

FORM 3

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

JERRY MORGAN and       *
EMMA MORGAN,       *
     *
     **Plaintiffs,**      *
     *
**vs.**      *      **Case No. CV-07-44**
     *
STANLEY SHAW and      *
GORDON BROWN      *
     *
     **Defendants.**      *



### AFFIDAVIT OF MONROE SMITH

KNOW ALL MEN BY THESE PRESENTS:

Before me, the undersigned authority, on this day personally appeared Monroe Smith, who being duly sworn, deposed, and stated upon his oath the following:

My name is Monroe Smith. I own Smith Realty and Appraisal, a real estate and appraisal business in Lanett, Alabama. I am in the business of, among other real estate-related functions, appraising property in the Chambers County, Alabama area.

At the request of Stanley Shaw I evaluated the lot located at 217 Glass Road, Valley, Alabama 36854 in order to appraise its value. Based upon my evaluation, I appraised the value of the subject lot to be approximately $7500, based upon my training and experience, and the evaluation I performed on or about March 28, 2007.

Further the Affiant saith not.

*Monroe Smith*
**MONROE SMITH**

STATE OF ALABAMA     )
Chambers     COUNTY )

SWORN TO AND SUBSCRIBED before me this the 29 day of March, 2007.

*Shannon Harper*
**NOTARY PUBLIC**

MY COMMISSION EXPIRES JAN. 10, 2010

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | |
|---|---|
| **JERRY MORGAN** and<br>**EMMA MORGAN,** | * |
| | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| **vs.** | *    **Case No. CV-07-44** |
| | * |
| **STANLEY SHAW** and<br>**GORDON BROWN** | * |
| | * |
| | * |
| **Defendants.** | * |



### NOTICE OF FILING NOTICE OF REMOVAL

TO:    Charles W. Story
      Circuit Clerk
      Chambers County Courthouse
      #2 LaFayette Street
      LaFayette, Alabama  36862

      Joseph M. Tucker
      P.O. Box 90
      LaFayette, Alabama  36862

Please take notice that Stanley Shaw, Defendant in this cause, has filed a notice of removal to the United States District Court for the Middle District of Alabama, Eastern Division; a copy of the notice of removal is attached to this notice.

Done this the ___ day of March, 2007.

                                _____
                                Christopher J. Hughes (HUG031)
                                Attorney for Stanley Shaw

OF COUNSEL:
**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Facsimile (334) 745-3506

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all of the Parties and Attorneys of record in the above-styled cause by First Class United States Mail, postage prepaid, on this the ___30___ day of March, 2007.

Joseph M. Tucker
P.O. Box 90
LaFayette, Alabama  36862

_____
OF COUNSEL